**UNITED STATES of America, Appellee,**

v.

**Eduardo OROZCO–PRADA, Humberto Orozco-Prada, Paul Forand and Mahlon Clark, Defendants-Appellants.**

**Nos. 667, 704, 668 and 669, Dockets 83–1264, 83–1265, 83–1272 and 83–1332.**

United States Court of Appeals, Second Circuit.

Argued Jan. 18, 1984.

Decided April 12, 1984.

Michael S. Feldberg, New York City, Asst. U.S. Atty., S.D.N.Y. (Rudolph W. Giuliani, U.S. Atty., S.D.N.Y., Roanne L. Mann, Asst. U.S. Atty., New York City, of counsel), for appellee.

Peter H. Morrison, New York City (Morrison, Paul & Beiley, P.C., Kevin T. Rover, New York City, of counsel), for defendant-appellant Eduardo Orozco-Prada.

Robert M. Simels, New York City, for defendant-appellant Humberto Orozco-Prada.

Rex Ryland, Jr., South Miami, Fla., for defendant-appellant Paul Forand.

Laurence B. Finegold, Seattle, Wash. (Jon R. Zulauf, Seattle, Wash., of counsel), for defendant-appellant Mahlon Clark.

Before FEINBERG, Chief Judge, and VAN GRAAFEILAND and KEARSE, Circuit Judges.

FEINBERG, Chief Judge:

Eduardo Orozco-Prada (Eduardo Orozco), Humberto Orozco-Prada (Humberto Orozco), Paul Forand and Mahlon Clark appeal from judgments of conviction entered in the United States District Court for the Southern District of New York, following a seven-week trial before Gerard L. Goettel, J., and a jury.

Appellant Eduardo Orozco headed an organization called Cirex International. Between 1978 and 1982, this organization laundered more than $150,000,000 in cash. The government's investigation, performed with the aid of undercover agent Edward Guillen who posed as a bank officer, established that the organization received large amounts of cash from various cities within the United States and from outside the country, and deposited the cash into different bank accounts maintained by Eduardo Orozco in his own name, in the names of other individuals and in the names of several Panamanian corporations. This money

was then rapidly transferred into other accounts and ultimately outside the country. Cirex charged a commission for the service. The government argued at trial that a large percentage of the cash deposited into Cirex accounts constituted the proceeds of domestic drug transactions. Appellant Humberto Orozco, Eduardo Orozco's older brother, was a bookkeeper and record-keeper at Cirex.

Appellant Forand deposited a total of over $1,000,000 in cash with Cirex between November 1980 and September 1981. In particular, on March 4, 1981, he deposited $270,000 in cash. The next day, Eduardo Orozco instructed that this money be transferred to the bank account of a shipbuilding company in Alabama. The money was then used to purchase a vessel called the *Northern Edge*. Appellant Clark was the captain of this vessel at the time it was captured in Colombian territorial waters carrying a large amount of marijuana.

Following a two-year government investigation, appellants—along with other individuals—were indicted on multiple counts. Count One charged all four appellants with conspiring to distribute and to possess with intent to distribute Schedule I and II controlled substances, and to aid and abet such distribution and possession, in violation of 21 U.S.C. § 846. Count Two charged Eduardo Orozco and Humberto Orozco with conspiring to defraud the United States and to commit currency and other offenses against the United States, in violation of 18 U.S.C. § 371. Counts Three and Four charged Eduardo Orozco and Humberto Orozco with making false statements in a matter within the jurisdiction of the Internal Revenue Service, in violation of 18 U.S.C. § 1001. Count Five charged Eduardo Orozco with violating the Travel Act, 18 U.S.C. § 1952. Count Six charged Eduardo Orozco and Humberto Orozco with acting as a financial institution without filing Currency Transaction Reports for deposits exceeding $10,000, in violation of 31 U.S.C. §§ 1081, 1059. Count Seven charged Eduardo Orozco with importing cash into the United States in amounts exceeding $5,000, without filing Reports of International Transportation of Currency or Monetary Instruments, in violation of 31 U.S.C. §§ 1101, 1059.

The jury returned guilty verdicts against Eduardo Orozco on Counts One, Two, Four, Five, Six and Seven; against Humberto Orozco on Count Two; against Forand on Count One and against Clark on Count One. Humberto Orozco was found not guilty on Counts One, Four and Six. Count Three was dismissed at the end of the government's case.

Judge Goettel sentenced Eduardo Orozco to eight years imprisonment on Count One and five years on each of the other counts, and made all sentences concurrent. He also imposed on Eduardo Orozco a total committed fine of $1,035,000 and levied the costs of prosecution against him. Humberto Orozco was sentenced to 18 months imprisonment and a $5,000 fine; Forand to six months in a community treatment center, a three-year probationary term and a $25,000 fine; and Clark to six months imprisonment and three years probation.

Appellants raise a great number of different arguments. In particular, all three appellants convicted on Count One argue that there was insufficient evidence to sustain their drug conspiracy convictions. They contend that the link between their activities and actual drug transactions in the United States was too tenuous to support their conviction. Humberto Orozco, who was acquitted on Count One, argues primarily that there was insufficient evidence to support his conviction on Count Two. He argues that his presence at Cirex, even if coupled with knowledge of the ongoing activities, did not constitute sufficient proof of participation in a conspiracy. For reasons stated hereafter, we affirm the judgments of the district court, except that we withhold judgment for 30 days on Eduardo Orozco's conviction on Count One to allow the government to choose between resentencing or a new trial, as more fully set forth below.

### I. Eduardo Orozco

#### A. *The Indictment*

We first consider Eduardo Orozco's argument that Count One failed to charge

a crime. Count One charged that Eduardo Orozco and others conspired both to violate and to aid and abet the violation of 21 U.S.C. § 841, which, among other things, makes it a crime "to ... distribute ... or possess with intent to ... distribute ... a controlled substance." The indictment alleges that the means used by Eduardo Orozco and others to further the conspiracy was to provide "a money laundering service involving currency deposits and check and wire transfers." Eduardo Orozco argues that simply dealing in the cash proceeds of transactions involving controlled substances is not a violation of section 841 and that, therefore, Count One fails to charge a conspiracy to violate this provision.

We find that this argument, on this record, has no merit. As we stated in *United States v. Barnes,* 604 F.2d 121, 154–55 (2d Cir.1979), cert. denied, 446 U.S. 907, 100 S.Ct. 1833, 64 L.Ed.2d 260 (1980),

> Importers, wholesalers, purchasers of cutting materials, and persons who "wash" money are all as necessary to the success of the venture as is the retailer. They can all be held to have agreed with one another in what has been called a "chain" conspiracy.

Similarly, in *United States v. Perry,* 643 F.2d 38, 44 (2d Cir.), cert. denied, 454 U.S. 835, 102 S.Ct. 138, 70 L.Ed.2d 115 (1981), the majority held that defendants who "agreed to distribute diluents with the intent that they be mixed with heroin and distributed by one or more heroin networks" could be convicted "under 21 U.S.C. § 846 of conspiring to violate 21 U.S.C. § 841 by aiding and abetting the distribution of heroin." The court stated that "the knowing supply of a raw material necessary for the commission of a crime by another constitutes aiding and abetting that crime." And, in *United States v. Rush,* 666 F.2d 10, 11 (2d Cir.1981) (per curiam), we held that an individual who "supplied the cash which made the illegal venture possible" could be convicted of conspiring to import marijuana into the United States with intent to distribute it. Read in conjunction, these cases stand for the prop-

osition that an agreement to engage in actions that are *integral* to the success of a drug venture prohibited by 21 U.S.C. § 841—such as laundering proceeds, or supplying cash or raw materials—violates 21 U.S.C. § 846 as a conspiracy to aid and abet the distribution of controlled substances.

This case is different from *Bollenbach v. United States,* 326 U.S. 607, 66 S.Ct. 402, 90 L.Ed. 350 (1946), and *United States v. Freeman,* 498 F.2d 569 (2d Cir.1974), upon which appellant heavily relies. In *Bollenbach,* the Court held that a defendant who helped dispose of transported securities that had been in interstate commerce could not properly have been convicted "for having conspired to transport securities across State lines *merely* on proof that he ... helped to dispose of the stolen securities *after the interstate transportation was concluded.*" 326 U.S. at 611, 66 S.Ct. at 404 (emphasis added). Similarly, in *Freeman,* we held that "the mere fact that a person 'receives, relieves, comforts or assists' one who has been a member of an aborted or completed conspiracy does not make him a participant in the conspiracy or liable for substantive crimes committed during the pendency of the conspiracy." 498 F.2d at 575. Eduardo Orozco argues that these cases support his contention that the mere handling of the proceeds of drug transactions is not punishable under section 841. In this case, however, the indictment charges more than the mere handling of proceeds. It charges a conspiracy to aid and abet the distribution of controlled substances by means of a money laundering organization and identifies one instance (the *Northern Edge* incident) in which the organization financed and assisted a specific drug transaction. As noted above, a laundering service of this type furthers the distribution of controlled substances by concealing the unlawful provenance of the funds thus keeping in business the purveyors of such substances.

■ To say that Count One charged a crime is not equivalent, of course, to saying

that Eduardo Orozco was properly convicted of the crime. To sustain that conviction, we must be satisfied that there was a sufficient link between Eduardo Orozco's operations and the underlying drug transactions. We must also be satisfied that Eduardo Orozco was a member of a conspiracy to aid and abet the distribution of controlled substances, and that he was not merely aiding and abetting a conspiracy to distribute such substances. As we noted in *United States v. Perry*, supra, 643 F.2d at 46–47, there is an important difference between "punishing an agreement to commit an act intended to aid another crime (a 'conspiracy to aid and abet') and imposing conspiratorial liability on one who, without agreement, merely assists conspirators in achieving their object (an 'aiding and abetting of a conspiracy')." Only the former was charged in Count One of this indictment. In the next section we discuss the sufficiency of the evidence that Eduardo Orozco was a member of a conspiracy whose object was to aid and abet the distribution of controlled substances.

### B. *The Evidence on Count One*

■ Eduardo Orozco also argues that there was insufficient evidence against him on Count One to justify submitting the count to the jury. Before evaluating this particular insufficiency claim, we note that a defendant advancing it bears "a very heavy burden." *United States v. Soto*, 716 F.2d 989, 991 (2d Cir.1983); *United States v. Carson*, 702 F.2d 351, 361 (2d Cir.), cert. denied, —— U.S. ——, 103 S.Ct. 2456, 2457, 77 L.Ed.2d 1335 (1983). In evaluating the strength of the evidence to determine whether the jury, drawing reasonable inferences, could have concluded that the defendant was guilty beyond a reasonable doubt, see *Jackson v. Virginia*, 443 U.S. 307, 317, 99 S.Ct. 2781, 2788, 61 L.Ed.2d 560 (1979); *United States v. Barnes*, supra, 604 F.2d at 157, we must view this evidence in the light most favorable to the government, *Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680

(1942), and construe all inferences in the government's favor, *United States v. Dazzo*, 672 F.2d 284, 288 (2d Cir.), cert. denied, 459 U.S. 836, 103 S.Ct. 81, 74 L.Ed.2d 77 (1982).

With this standard in mind, we proceed to examine the jury instructions and the evidence itself. In his instruction on Count One, Judge Goettel did not charge that the mere handling of proceeds was enough to convict appellant of participating in the conspiracy. He charged, instead, that

> you must find that the defendant provided the money laundering services described above; that he knew that some of the money was derived from the distribution of controlled substances; and that he acted with the intent to further the crime of distributing or possessing with intent to distribute controlled substances—in other words, that he sought by his actions to make the crime succeed.
>
> To convict a defendant you must also find that some of the money was derived from controlled substances that were distributed in the United States.

These instructions, which are not challenged by Eduardo Orozco, are consistent with the holding of the majority in *United States v. Perry*, supra, 643 F.2d at 45: The government did not need to identify "any principal at all." All it had to show was that "the underlying crime was committed by someone."

■ Applying these standards, we conclude that Eduardo Orozco's insufficiency claim on Count One lacks merit. First, Eduardo Orozco's statement on October 15, 1981, to Agent Guillen indicates that Orozco was aware that the money deposited into Cirex accounts came, in large part, from drug transactions. Eduardo Orozco told Guillen that "60 to 70%" of the money handled at Cirex was "coming from drugs." It was certainly proper for the jury to conclude from this conversation that Eduardo Orozco was aware that at least some of the money that Cirex laundered came from drug transactions.[1]

---

1. Eduardo Orozco's statement was taped by Agent Guillen. Both the government and

There was also sufficient proof for the jury to conclude that at least some of the money came from *domestic* drug dealings. Rogelio Cespedes, a former associate of Eduardo Orozco, pleaded guilty prior to the trial and testified as a government witness that he had traveled to Boston to pick up large boxes of money, and that he had brought these boxes to New York. Another former associate of Eduardo Orozco, Gonzalo Castillo, testified that he had carried briefcases from Boston and Washington, DC, to New York, and that he gave these briefcases to Eduardo Orozco. Tanny Diaz, a secretary at Cirex, testified that Eduardo Orozco and his cousin Rodrigo Mendoza made several trips to Miami to pick up suitcases of cash. And Charles Avakian, a private investigator hired by Eduardo Orozco, testified that he was asked to make three to five trips a week from Miami to New York, each time carrying $500,000 in cash.

It would be possible for a jury to conclude from this evidence that the money that was being transported domestically in fact came from abroad initially, and was the proceeds of foreign drug transactions. But it seems much more plausible to conclude that the money was the product of domestic transactions. Indeed, it seems illogical to transport money from abroad into Boston, Washington, DC, and Miami, only to have it transported later to New York. In any event, we need not decide which inference is more logical. All that we need say—and we do so without hesitation—is that it was proper for the jury to conclude that at least some of the money was the product of domestic drug transactions.

Eduardo Orozco argues that even on the assumptions that there was proof of underlying drug transactions, that some of the money laundered by Cirex derived from drugs and that some of these drugs were sold domestically, his conviction would still not be proper unless the jury had also been presented with enough evidence to conclude that "he associated himself with the venture, participated in it as in something that he wished to bring about, and sought by his actions to make it succeed." On the record before us, we find that Eduardo Orozco had a sufficient "stake in the venture" to support the conspiracy conviction. See *Direct Sales Co. v. United States,* 319 U.S. 703, 713, 63 S.Ct. 1265, 1270, 87 L.Ed. 1674 (1943); *United States v. Falcone,* 109 F.2d 579, 581 (2d Cir.), aff'd, 311 U.S. 205, 61 S.Ct. 204, 85 L.Ed. 128 (1940). While the record does not show the commissions that Eduardo Orozco charged for laundering money, it indicates that he was willing to pay middlemen—including Agent Guillen—substantial commissions. It was thus proper for the jury to conclude that his own commissions were also substantial.

In addition, Eduardo Orozco—together with appellants Forand and Clark—argues that the capture of marijuana aboard the *Northern Edge* off the coast of Colombia could not properly be presented to the jury as further evidence of the conspiracy because the drugs were not intended for distribution in the United States. The jury, however, was instructed that

> if you find that a defendant possessed with intent to distribute controlled substances or aided and abetted such acts, you may not consider this as a factor in determining whether the defendant is guilty of Count I unless the controlled substances were intended to be distributed in the United States.

In view of this instruction, and on the record before us, we find that this argument of Eduardo Orozco lacks merit. It was permissible for the jury to find, in light of all the evidence presented, that the drugs were intended for distribution in the United States.

---

Eduardo Orozco presented their own, differing transcripts of the conversation to the jury. For the purposes of this insufficiency of the evidence claim, we can properly assume that the jury relied on the government's version. Furthermore, we note that Agent Guillen testified at trial that "Eduardo Orozco at one point had stated that 60 to 70 percent came from, in one or other ways, from drugs."

In summary, the evidence supports the jury's finding that Eduardo Orozco was guilty on Count One.

## C. *The Sentence on Count One*

Eduardo Orozco was sentenced to a prison term of eight years and a $25,000 fine on Count One pursuant to 21 U.S.C. § 841(b)(1)(A), which applies to narcotic drugs such as cocaine. At sentencing, Judge Goettel apparently relied on this statute on the theory that the evidence presented to the jury supported the inference that at least some of the laundered money was the product of cocaine sales.

■ Eduardo Orozco argues that he should not have received a sentence higher than the maximum—five years and $15,000 —permitted under 21 U.S.C. § 841(b)(1)(B), which covers controlled substances, such as marijuana, that are not narcotic drugs, because marijuana was the only controlled substance for which proof of at least one specific transaction was offered. We disagree with appellant's contention that proof of a specific transaction is necessary. It is true that the *Northern Edge* incident involved only marijuana, and that the government has conceded that there was no similar direct proof of cocaine transactions. However, as we have already stated, the government need not identify specific drug transactions to secure a conviction under 21 U.S.C. § 846. *United States v. Perry*, supra, 643 F.2d at 45. We also note that the record contains a statement from Eduardo Orozco to Agent Guillen that may have led the jury to conclude that the underlying drug transactions involved cocaine.

■ Nonetheless, we cannot conclude that the sentence was proper. Count One of the indictment charged Eduardo Orozco with a conspiracy punishable under both section 841(b)(1)(A) and section 841(b)(1)(B). The former section, which covers cocaine, authorizes a sentence of up to fifteen years; the latter, which covers marijuana, allows a sentence of up to five years. Eduardo Orozco's sentence of eight years was higher than the penalty authorized by

section 841(b)(1)(B). But in the absence of a special verdict, there was no way for Judge Goettel to know whether the jury intended to convict Eduardo Orozco for a cocaine-related conspiracy, for a marijuana-related conspiracy, or for a conspiracy involving both drugs. See *United States v. Ruggiero*, 726 F.2d 913, 921 (2d Cir.1984). On this issue, this case is similar to *United States v. Quicksey*, 525 F.2d 337 (4th Cir. 1975), cert. denied, 423 U.S. 1087, 96 S.Ct. 878, 47 L.Ed.2d 97 (1976). There, the defendants were charged in one count of a general conspiracy, 18 U.S.C. § 371, and a drug conspiracy, 21 U.S.C. § 846. The jury found the defendants guilty under that count without specifying whether they were guilty of a general conspiracy or of a drug conspiracy. The defendants received a sentence that was higher than the maximum sentence permissible for general conspiracy, but lower than the maximum drug conspiracy sentence. On appeal, defendants argued that they should have been sentenced under the general conspiracy statute, not the drug conspiracy statute. The government argued that there was sufficient evidence to justify conviction for a conspiracy to violate the drug laws, and that consequently the sentence imposed was proper. The Fourth Circuit held that "in the absence of a special verdict, it is not possible to ascertain whether the jury intended to find defendants guilty of conspiracy to violate the Travel Act or the Drug Act, or both Acts." 525 F.2d at 341. The court stated that if the government agreed to resentencing under the general conspiracy statute, it would affirm the convictions and remand for resentencing. If the government did not consent, it would vacate the convictions and remand for a new trial. Id.

The D.C. Circuit reached the same result in *Brown v. United States*, 299 F.2d 438 (D.C.Cir.), cert. denied, 370 U.S. 946, 82 S.Ct. 1593, 8 L.Ed.2d 812 (1962), in an opinion written by then Circuit Judge Burger. In that case, as in *Quicksey*, the court found that the record contained evidence from which a jury could have concluded

that the statutes with the higher penalty had been violated but nonetheless refused to affirm the district court. See also *United States v. Noah,* 475 F.2d 688, 693 & n. 7 (9th Cir.), cert. denied, 414 U.S. 821, 1095, 94 S.Ct. 119, 728, 38 L.Ed.2d 54, 553 (1973). And, a district court in our circuit has read *Brown* as requiring a sentencing judge faced with a conviction on a count that charged the violation of more than one statute to impose a sentence under the statute providing the least severe punishment. *United States v. Amato,* 367 F.Supp. 547, 549 (S.D.N.Y.1973).

We realize, of course, that the cases we have just discussed all involved counts charging the violation of more than one statute. We have a case, instead, in which the count charges the violation of a single conspiracy statute, but where the conspiracy has two objects. We believe that this case raises the same problem of ascertaining juror intent that is at issue in counts charging the violation of multiple statutes. 8 Moore's Federal Practice ¶ 8.03[2], at 9–10 (2d ed. 1983). Thus, we cannot uphold Eduardo Orozco's sentence on Count One. This case is unlike *United States v. Peters,* 617 F.2d 503, 506 (7th Cir.1980) (per curiam), where the Seventh Circuit upheld a fifteen-year drug conspiracy sentence, even though "several of the substantive offenses underlying the conspiracy charged [had] maximum sentences of less than 15 years." In that case, defendant was also convicted of substantive drug offenses carrying fifteen-year sentences. The court stated that "since the jury convicted defendant of the offenses ... that were the objects of the alleged conspiracy, it is reasonable to conclude that the jury found defendant guilty of a conspiracy to commit [those] substantive offenses." The case is also different from *United States v. Gomez-Geraldo,* 652 F.2d 452, 453 (5th Cir. 1981) (per curiam), where the jury found by special verdict that both marijuana and cocaine were the objects of the conspiracy.

■ We note that in *Brown v. United States,* supra, 299 F.2d at 440 n. 3, the DC. Circuit suggested that if the government chose to retry the case without amending the indictment, it would be the government's responsibility to seek special verdicts. While this circuit has indicated that special verdicts are generally not favored in criminal cases, see *United States v. Adcock,* 447 F.2d 1337, 1339 (2d Cir.) (per curiam), cert. denied, 404 U.S. 939, 92 S.Ct. 278, 30 L.Ed.2d 252 (1971); *United States v. Ruggiero,* supra, 726 F.2d at 925–28 (Newman, J., concurring in part and dissenting in part); cf. *United States v. Gallishaw,* 428 F.2d 760, 764–66 (2d Cir.1970), we have upheld special verdicts when the information sought is relevant to the sentence to be imposed. E.g., *United States v. Murray,* 618 F.2d 892, 895 n. 3 (2d Cir.1980); *United States v. Stassi,* 544 F.2d 579, 583–84 (2d Cir.1976), cert. denied, 430 U.S. 907, 97 S.Ct. 1176, 51 L.Ed.2d 582 (1977).

Following the procedure used in *Quicksey* and *Brown,* we withhold our judgment on Eduardo Orozco's conviction on Count One for 30 days. If the government within that time consents to a resentencing under 21 U.S.C. § 841(b)(1)(B), we will affirm the conviction on that count and remand for resentencing. If, on the other hand, the government does not consent, we will vacate Eduardo Orozco's conviction on Count One and remand for a new trial.

### D. The Costs of Prosecution

Prior to sentencing, the government submitted a memorandum accompanied by an affidavit of the Comptroller of the Banco Nacional de Panama. The affidavit stated that two exhibits that Eduardo Orozco had unsuccessfully attempted to introduce at trial were fraudulent. These two exhibits were purported copies of currency reports prepared by the Banco Nacional de Panama. The Comptroller's affidavit stated that those reports had not been prepared by his bank.

Eduardo Orozco requested a presentencing hearing to contest the government's allegation that he had sought to perpetrate a fraud on the court; for this reason, his sentencing was adjourned for approximate-

ly one month. At the hearing, Eduardo Orozco offered no testimony or other evidence and his attorney declined repeatedly to disclose the source of the documents. The court concluded that the exhibits were fabrications, and that Eduardo Orozco had some involvement in the use of these false documents. For this reason, the judge enhanced his sentence by levying the costs of prosecution against him.

■■■ Eduardo Orozco contends that his sentence was enhanced on the basis of an inadequate showing by the government. He does not challenge the court's authority to assess such costs, see 28 U.S.C. § 1918(b); *United States v. Burchinal,* 657 F.2d 985, 997–98 (8th Cir.), cert. denied, 454 U.S. 1086, 102 S.Ct. 646, 70 L.Ed.2d 622 (1981); *United States v. Pommerening,* 500 F.2d 92, 101–02 (10th Cir.1974), cert. denied, 419 U.S. 1088, 95 S.Ct. 678, 42 L.Ed.2d 680 (1974), but, rather, argues that the court's reliance on hearsay evidence on the issue of fraud at sentencing violated the due process and confrontation clauses. Appellant's argument is without merit: there is no question that hearsay evidence may be used at sentencing. See *Williams v. New York,* 337 U.S. 241, 250–52, 69 S.Ct. 1079, 1084–86, 93 L.Ed. 1337 (1949); *United States v. Fatico,* 579 F.2d 707, 711–13 (2d Cir.1978) (*Fatico I*). The evidence presented to the district court was far more reliable than the anonymous informant hearsay information allowed in *United States v. Fatico,* 603 F.2d 1053, 1056–57 (2d Cir.1979) (*Fatico II*), cert. denied, 444 U.S. 1073, 100 S.Ct. 1018, 62 L.Ed.2d 755 (1980). Judge Goettel correctly observed that "[w]hen the information comes from a known source who is not a person of bad character, and ... a bank official would fall in that category, there is an adequate basis for accepting it even though hearsay." As we have often said, the conduct of sentencing proceedings rests within the sound discretion of the district court. See, e.g., *United States v. Robin,* 545 F.2d 775, 779 (2d Cir.1976); *United States v. Rosner,* 485 F.2d 1213, 1230 (2d Cir.1973), cert. denied, 417 U.S. 950, 94 S.Ct. 3080, 41 L.Ed.2d 672 (1974). Because we find that

Judge Goettel took "appropriate steps to ensure the fairness and accuracy of the sentencing process," *United States v. Robin,* supra, 545 F.2d at 779, we see no reason to upset his exercise of discretion.

## II. Humberto Orozco

Humberto Orozco argues that the evidence submitted at trial was insufficient to permit the jury to convict him on Count Two. He claims that all that the evidence establishes is that he performed a series of errands for his brother, Eduardo Orozco. In particular, he argues that the evidence does not establish that he had knowledge of the conspiracy or of the objectives of that conspiracy.

■■■ We find that there was sufficient evidence for the jury to find Humberto Orozco guilty on Count Two. At trial, the government introduced evidence showing that Humberto Orozco was the principal bookkeeper for Cirex; and that when cash was brought into Cirex, he was the person who counted it, broke it down by denomination and credited it to the account of the appropriate customer. He also made numerous deposits into an account that Cirex kept at the foreign exchange house of Deak-Perera. Humberto Orozco also delivered a $5,000 payment to Agent Guillen. The record shows that Humberto Orozco became suspicious that Guillen was an FBI agent. Given the many conspiratorial activities in which Humberto Orozco participated, it was proper for the jury to conclude that he had knowledge of the conspiracy charged in Count Two and of its objectives. See *United States v. DeFiore,* 720 F.2d 757, 763–64 (2d Cir.1983).

This case is different from *United States v. Soto,* supra, on which appellant relies. In that case, this court reversed a conviction on the grounds that the defendant's "mere presence" in an apartment used as a drug processing mill was not sufficient to establish her guilt. We stated that "[a]bsent some showing of purposeful behavior tending to connect defendant with the acquisition, concealment, importation,

use of sale of drugs or firearms, participation in the conspiracies cannot be proven by presence alone." 716 F.2d at 991–92. Humberto Orozco would have been in the same position as the appellant in *Soto* if the evidence had shown no participatory acts but only that he occupied an office within Cirex's premises. But that was not so; Humberto Orozco participated in many of the activities of the conspiracy. We do not suggest that the evidence against Humberto Orozco was overwhelming. It was not, which is undoubtedly why he was acquitted on three of the four counts that went to the jury. But taken in the light most favorable to the government, the evidence on Count Two was sufficient. Humberto Orozco also argues that the "prejudicial spillover" from the other counts requires a new trial; the jury's careful verdicts, however, show that it considered the evidence on each count carefully.

### III. Forand

■ Appellant Forand also raises a sufficiency of the evidence claim with respect to his conviction on Count One. On this score, he argues primarily that the government failed to prove his participation in the conspiracy. We do not accept appellant's contention. Cirex's records show Forand's involvement with the Orozco organization. In November 1980, he deposited over $1,000,000 in cash with Cirex, most of which was transferred a week later to Forand's bank account in the Cayman Islands. An attempt was later made to conceal Forand's connection with the money. Forand also deposited additional large amounts of cash with Cirex, and the record shows that at least some of this was transferred quickly to a Forand personal account in Massachusetts after a commission was deducted.

Most significantly, Cirex's records show that $270,000 in cash was brought to Cirex on March 4, 1981 and that a person identified as "Phillips" was the source of this cash.[2] Eduardo Orozco's notebook contained two entries for "Phillips," one with two telephone numbers and the other with an address. Independent evidence showed that both phone numbers were listed to Paul Forand at the address shown in Eduardo Orozco's notebook. At the time the cash in question was deposited at Cirex, Paul Forand lived at that address. It was certainly reasonable for the jury to conclude that the person identified as Phillips in Eduardo Orozco's notebook was Forand.

The record also shows that the $270,000 sum transferred into Cirex was used to purchase the *Northern Edge*. Forand argues, however, that the jury could not infer from this record his knowledge of the purpose of the $270,000 transfer or that the *Northern Edge* would be used for illicit purposes. We disagree; under the standards used in assessing claims based on the insufficiency of the evidence, we hold that it was proper for the jury to convict Forand on Count One.

### IV. Clark

#### A. *Multiple Conspiracies*

■ Appellant Clark argues that while the indictment charged one conspiracy, the evidence established only multiple conspiracies. He contends that his conviction is thus invalid under the rule laid down in *Kotteakos v. United States*, 328 U.S. 750, 767–69, 66 S.Ct. 1239, 1249–50, 90 L.Ed. 1557 (1946). But in applying *Kotteakos*, we have consistently held that the question whether one or multiple conspiracies are present is a question of fact, to be resolved by a properly instructed jury. See *United States v. Bagaric*, 706 F.2d 42, 63 n. 18 (2d Cir.1983); *United States v. Carson*, supra, 702 F.2d at 358 n. 11; *United States v. Alessi*, 638 F.2d 466, 472 (2d Cir.1980).

The instruction in this case was proper:

I want to remind you that Count 1 of the indictment charges all of the defendants except Danies with a single conspiracy. Proof of several separate conspiracies is not proof of the single conspiracy charged in the indictment, unless one of the several conspiracies that is proved is the single conspiracy charged in the indictment.

---

**2.** The name "Phillips" is spelled in various ways in the Cirex records.

. . . .

If you find that a particular defendant was a member of another conspiracy, not the one charged in the indictment, then you must acquit that defendant of the conspiracy charged in Count 1.

Since the jury was properly charged, the issue that we must consider is whether there was sufficient evidence to support the jury's finding of a single conspiracy. We conclude that the evidence was sufficient. While Clark's argument that there were two conspiracies, one centered around Cirex, and the other centered around the *Northern Edge* is plausible, it is not so compelling, under the standards that we must apply on this appeal, to persuade us that the jury had to accept it. Indeed, the money used for the purchase of the *Northern Edge* was laundered through Cirex. Furthermore, when stopped by the Colombian Navy, Clark carried a slip of paper that listed three Colombian telephone numbers; another slip containing the same three numbers was found at the Cirex office following Eduardo Orozco's arrest. This evidence, though circumstantial, allowed the jury to infer that there was a single conspiracy and that Clark was a participant in that conspiracy.

B. *Extra-Territorial Jurisdiction*

██ Clark also argues that Congress did not intend 21 U.S.C. § 841(a)(1) to apply to acts committed outside the territorial jurisdiction of the United States. As a result, he contends, his conviction on Count One should be dismissed because at the time the *Northern Edge* was intercepted with a large amount of marijuana on board, he and the vessel were in Colombian territorial waters, more than one thousand miles from the mainland of the United States. According to Clark, only 21 U.S.C. § 955a, and not 21 U.S.C. § 841(a)(1), applies to the conduct with which he was charged. He argues that section 955a, enacted in 1980, was expressly designed to fill a void that allegedly occurred because the Comprehensive Drug Abuse Prevention and Control Act of 1970 "inadvertently con-

tained a section repealing the criminal provision under which drug smugglers apprehended on the high seas were prosecuted without creating a new provision to replace it." S.Rep. No. 96–855, 96th Cong., 2d Sess. 1, reprinted in 1980 U.S.Code Cong. & Ad.News 2785. Clark contends that his conduct fell within this void and that it was therefore inappropriate for Count One to charge him with conspiring to violate section 841(a)(1).

Though interesting, Clark's analysis is incorrect. The vacuum that Clark refers to did not include cases in which an individual detained in extra-territorial waters intended to distribute controlled substances in the United States. As the Fifth Circuit clearly stated prior to the enactment of section 955a:

> In terms of § 841(a)(1), which proscribes the substantive crime of possession with intent to distribute, we hold that so long as it is clear that the intended distribution would occur within the territorial United States, as in this case, jurisdiction may be maintained, where defendants are apprehended outside the territorial waters, and inside the contiguous zone.

*United States v. Baker*, 609 F.2d 134, 139 (5th Cir.1980). It is true that defendants in *Baker* were apprehended outside the three-mile territorial jurisdiction of the United States but inside the twelve-mile "customs waters" or contiguous zone. But the Fifth Circuit had previously upheld a conviction for conspiracy to distribute marijuana in violation of 21 U.S.C. § 846, the same provision under which Clark was convicted here, which makes criminal an agreement to violate section 841. *United States v. Cadena*, 585 F.2d 1252, 1257 (5th Cir.1978). In that case, the vessel was seized about 200 miles off the coast of Florida—and thus clearly outside the contiguous zone.

Similarly, the First Circuit has held that section 841(a)(1) does not apply to possession outside the territorial seas unless the possessor intended to distribute the contraband within the United States. *United States v. Hayes*, 653 F.2d 8, 15 (1st Cir. 1981). In discussing *Baker* and *Hayes*,

this circuit has stated that "the intent to distribute within the United States supplies a jurisdictional nexus that might otherwise be lacking. The intent to cause effects within the United States also makes it reasonable to apply to persons outside United States territory a statute which is not expressly extraterritorial in scope." *United States v. Muench*, 694 F.2d 28, 33 (2d Cir. 1982), cert. denied, — U.S. —, 103 S.Ct. 1881, 76 L.Ed.2d 811 (1983).

The vacuum that Congress was concerned about involved cases in which it was not possible to show intent to produce effects within the United States. See *United States v. Hayes*, supra, 653 F.2d at 16. Section 955a, enacted as we have said to fill part of that vacuum, applies to United States vessels or vessels subject to the jurisdiction of the United States on the high seas, 21 U.S.C. § 955a(a); United States citizens aboard any vessels, id. § 955a(b); and any person aboard any vessel within the customs waters of the United States, id. § 955a(c). We have held that stateless vessels are subject to the jurisdiction of the United States for the purposes of section 955a(a). See *United States v. Henriquez*, 731 F.2d 131 (2d Cir.1984); *United States v. Pinto-Mejia*, 720 F.2d 248, 260–61 (2d Cir.1983).

In summary, because section 841(a)(1) properly applies to schemes to distribute controlled substances within the United States and because there was sufficient evidence for the jury to find, under a proper instruction (see discussion in section II B, supra), that to be the case here, Clark's conviction on Count One of conspiring to violate section 841(a)(1) was proper.

In any event, as we stated in the preceding section, it was proper for the jury to conclude that the *Northern Edge* incident was part of a larger conspiracy. Given that many of the activities of the conspiracy took place within the United States and that, as we have stated in section II B, supra, there was sufficient evidence for the

jury to conclude that appellants conspired to aid and abet the distribution of drugs *within the United States*, Clark could have been charged under Count One even if his statutory argument had merit. However, because his argument does not have merit and because the jury was properly instructed as to the *Northern Edge* incident, we need not deal with the question whether the *Northern Edge* evidence could have otherwise been admitted.

## V. Conclusion

 Appellants raise a plethora of other issues.[3] Were we to discuss them all in detail, this already lengthy opinion would be almost interminable. We have examined each of those issues and find them without merit. In particular, having reviewed in its entirety the transcript of the proceeding at which search and arrest warrants were issued, we conclude that the warrants requested by the government were adequately reviewed. Eduardo Orozco claims that the remarks of the judge who issued the warrants show that the judge abdicated his role as a "neutral and detached magistrate." It is true that the judge's remark that the government agents and the Assistant United States Attorney handling the case "know proof, ... know the significance of it and therefore the Court has to accept and does accept their representations without question" was unfortunate. However, the judge made this remark after indicating that he had read the affidavit of the two agents and had found it to be "among the most powerful I have read." Also, when the matter ultimately came before another judge (Judge Goettel) on a motion to suppress the evidence obtained in executing the warrants, he noted that "there is nothing before me to indicate that the reviewing magistrate did not adequately review the affidavit." We note that substantial deference is due to the determinations of the judges authorizing and reviewing the searches, see *United States v. Bagaric*, supra, 706 F.2d at 66,

---

**3.** We note that some of the arguments we have dealt with were raised by more than one appellant and for convenience we have not always

identified the additional appellants raising a particular argument.

and we agree with Judge Goettel that the record does not compel the conclusion that the authorizing judge abdicated his role.

■ We also are unpersuaded by Eduardo Orozco's argument that the district court should have held a hearing to ascertain the veracity of the "probable cause" affidavits. In *Franks v. Delaware*, 438 U.S. 154, 155–56, 98 S.Ct. 2674, 2676–77, 57 L.Ed.2d 667 (1978), the Supreme Court held that such a hearing should be held only if the defendant made a "substantial preliminary showing" that an affiant had knowingly and intentionally made a false statement in his affidavit and if the allegedly false statement was "necessary to the finding of probable cause." See also *United States v. Barnes*, supra, 604 F.2d at 151–53. In this case, Eduardo Orozco made no offer of proof and did not submit a sworn or otherwise reliable statement of a witness. Moreover, Eduardo Orozco's argument that the affidavit was false was premised on his interpretation of his conversation with Agent Guillen. As we noted above, multiple interpretations of that conversation were submitted to the jury, and the jury seems to have believed the government's version.

We also find that there was sufficient independent non-hearsay evidence linking Eduardo Orozco, Forand and Clark to the Count One conspiracy, and Eduardo Orozco and Humberto Orozco to the Count Two conspiracy. Thus, the arguments that co-conspirator hearsay was improperly admitted lack merit. See *United States v. Terry*, 702 F.2d 299, 320 (2d Cir.), cert. denied, — U.S. —, 103 S.Ct. 2095, 77 L.Ed.2d 304 and — U.S. —, 104 S.Ct. 482, 78 L.Ed.2d 680 (1983).

In summary, judgment on Eduardo Orozco's conviction on Count One is withheld for 30 days. Eduardo Orozco's convictions on the other counts, and the convictions of Humberto Orozco, Forand and Clark are affirmed.