**UNITED STATES of America, Plaintiff,**

**v.**

**ALL FUNDS AND OTHER PROPERTY CONTAINED IN ACCOUNT NUMBER 031–217362 in the Name of Rogelio Cespedes, Account Number 031–504641 in the Name of Rogelio Cespedes and Account Number 400543515, Account Holder Unknown, at Chemical Bank, Defendants-In-Rem.**

**Nos. 83 Civ. 354 (RLC), 83 Civ. 369 (RLC), 83 Civ. 372 (RLC), 83 Civ. 373 (RLC), 83 Civ. 375 (RLC) and 83 Civ. 3525 (RLC).**

United States District Court, S.D. New York.

Oct. 16, 1986.

Rudolph W. Giuliani, U.S. Atty., S.D. N.Y., New York City, for plaintiff; Jane E. Booth, Mary Anne Wirth, Asst. U.S. Attys., of counsel.

Morrison Cohen & Singer, New York City, for claimant Cirex Intern.; Kevin T. Rover, of counsel.

Javits, Robinson, Brog, Leinwand & Reich, P.C., New York City, for intervenor claimant Harvey Reich; Jeffrey W. Herrmann, of counsel.

## OPINION

ROBERT L. CARTER, District Judge.

Plaintiff United States of America moves pursuant to Rule 56, F.R.Civ.P. for summary judgment in the above-captioned actions. These actions arise out of a criminal investigation into a narcotics-related money laundering operation that ultimately resulted in the conviction of four defendants. At the time those defendants were arrested, the government seized the funds now in dispute as well as other funds and property, and commenced a total of twelve civil actions in this district pursuant to 21 U.S.C. § 881(a).[1] The court is now called upon to

---

1. That section provides in pertinent part:
    The following shall be subject to forfeiture to the United States and no property right shall exist in them:
        (6) All moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance in violation of this subchapter, all proceeds traceable to such an exchange, and all moneys, negotiable instruments, and securities used or in-

decide whether a trial is necessary to determine the ultimate destination of the funds that found their way into this court.

## BACKGROUND

In the original criminal proceeding, four defendants, Eduardo Orozco-Prada ("Orozco"), Humberto Orozco-Prada, Paul Forand, and Mahlon Clark were found guilty of violating a variety of drug, tax and financial reporting statutes. Most important for our purposes today was their participation in a money laundering operation that laundered more than $150 million over a four-year period. *See United States v. Orozco-Prada,* 732 F.2d 1076, 1078–79 (2d Cir.), *cert. denied,* 469 U.S. 845, 105 S.Ct. 154, 83 L.Ed.2d 92 (1984).

As established at trial, the laundering operation was conducted under the auspices of an organization headed by Orozco called Cirex International ("Cirex"). The government investigation revealed that Cirex received large amounts of cash, much of it small bills transported in suitcases, which it deposited into bank accounts maintained in Orozco's name or in the names of other individuals and corporations. Cirex took a commission for counting and re-routing the money. *Id.* at 1081.

The trial revealed a substantial connection between the money Cirex laundered and drug trafficking. Indeed, in order to affirm Orozco's conviction on Count I of the indictment, the Second Circuit had to find, as it did, that there was sufficient evidence linking Cirex to drug transactions, and that Orozco himself was a member of a conspiracy to aid and abet the distribution of narcotics. *Id.*[2]

That evidence, the court found, came from a number of sources. First, Orozco himself confided to an undercover agent posing as a bank officer that 60 to 70 percent of the money that came through Cirex came from drug transactions. *Id.* at 1082 n. 1. A similar admission was made by Orozco and a confederate to an investigator they had hired to transport a half a million dollars in cash three to five times a week from Miami to New York. When the investigator mentioned that money in such quantities had to derive from drug trafficking, they did not try to convince him otherwise. Trial Transcript at 554; *see also* 732 F.2d at 1082.

There was significant additional evidence introduced at trial linking Cirex to the drug trade. For our purposes, only one additional incident requires any mention: In March of 1981, $270,000 in cash was brought to Cirex and credited to the account of one "Phillips," who turned out to be defendant Paul Forand. Trial Transcript at 623, 1040. The money was then deposited in an account at Deak-Perera. Orozco directed Deak-Perera to transfer the money to a shipbuilder in Alabama as payment for a shrimp fishing vessel that was subsequently stripped of its fishing gear. Trial Transcript at 1976–77. In May, 1981 defendant Clark was captaining the boat when it was stopped off the coast of Columbia with a cargo hold full of marijuana. Trial Transcript at 2820. A slip of paper with three Bogota phone numbers was found on Clark and on the ship when he was apprehended. Those same three numbers were found in Orozco's office at Cirex following his arrest.

The six consolidated actions before the court concern money the government seized in nine bank accounts as well as $22,110.00 in cash seized at Cirex headquarters. One account is held by Orozco. Four accounts are in the name of Cirex. Another account is in the name Global Bay

---

tended to be used to facilitate any violation of this subchapter ....

**2.** The Second Circuit approved the jury's finding, which was made pursuant to the following instruction given by Judge Goettel:

[Y]ou must find that the defendant provided the money laundering services described above; that he knew that some of the money was derived from the distribution of controlled substances; and that he acted with the intent to further the crime of distributing or possessing with intent to distribute controlled substances—in other words, that he sought by his actions to make the crime succeed.

To convict a defendant you must also find that some of the money was derived from controlled substances that were distributed in the United States.

*United States v. Orozco-Prada, supra,* 732 F.2d at 1081.

Commerce, a Panamanian company that Orozco used as a receptacle of cash.[3] Three of the accounts are held by Rogelio Cespedes, a criminal defendant who pleaded guilty and, in his testimony for the government at trial, relayed how he allowed Orozco to channel money through his (Cespedes') bank accounts and acted as a nominee for an Orozco account. Trial Transcript at 1327–1579.

Four claimants contest the government's right to the seized funds. Cirex filed a claim of lien to the three Cespedes accounts (83 Civ. 0354),[4] its own account at the Bank of North America (83 Civ. 0369), two accounts in its name at Chase Manhattan Bank (83 Civ. 0372),[5] and the $22,110.00 in cash seized at its offices.

Global Bay filed a claim of lien to the account in its name at Bankers Trust (83 Civ. 0373).

Orozco filed a claim to an account in his name at Irving Trust (83 Civ. 0375).

Harvey Reich as receiver of the assets of Cirex[6] has filed a claim of lien to two accounts in Cespedes' name at Chemical Bank (83 Civ. 0354), the two Cirex accounts at the Bank of North America (83 Civ. 0369), and the cash seized at Cirex's office (83 Civ. 3525).

## DISCUSSION

A movant is entitled to summary judgment if there is no issue of material fact remaining to be resolved. The United States Supreme Court has recently made clear that the trial judge evaluating a motion for summary judgment is to weigh the issues in accordance with the standard of proof that will govern at trial. *Anderson v. Liberty Lobby, Inc.,* —— U.S. ——, 106 S.Ct. 2505, 2511–12, 91 L.Ed.2d 202 (1986).

■ Here the standard of proof is provided by 21 U.S.C. § 881, the statute governing forfeitures of property traceable to narcotics. Under the statute, the government may establish a *prima facie* case on a showing of probable cause. Once the government establishes probable cause, then the claimant bears the ultimate burden of proving that the money seized was not used or intended to be used to facilitate a drug transaction. *United States v. Banco Cafetero Panama,* 797 F.2d 1154, 1160–62 (2d Cir.1986) (citing statutes).

■ To meet the probable cause requirement, the government must only demonstrate that it has "reasonable grounds" to believe the money is linked to drug trafficking and subject to forfeiture. *Id.* These grounds "must rise above the level of mere suspicion," *id.,* but need not satisfy a preponderance of the evidence standard. *Id.* at 1160 n. 7. Although the government must prove a nexus between the seized money or property and narcotics

---

**3.** Orozco himself told an undercover agent that Global Bay was used to move money. In addition, when the undercover agent posed as a bank loan officer, Orozco opened an account in the name of Global Bay. Trial Transcript at 1607.

**4.** Cirex claims that:

Upon information and belief, Rogelio Cespedes maintained the Rogelio Cespedes account [sic] at Chemical Bank. In or about 1982, Rogelio Cespedes borrowed monies from Cirex and there is presently due and owing by Rogelio Cespedes to Cirex an amount in excess of $50,000.00, no part of which has been repaid although duly demanded. Rogelio Cespedes has admitted his indebtedness to Cirex.

*See* Exhibit E to the Booth Declaration.

**5.** In this action, there is a third account in the name of Calypso Travel. Because there are no funds in the account, the United States does not seek judgment of forfeiture on that account.

**6.** On January 18, 1985, Judge Gerard L. Goettel, upon application of the government in *United States of America, Petitioner v. Eduardo Orozco-Prada,* 82 Cr. 811 (GLG), issued an order appointing Harvey Reich "receiver of all real or personal property or assets of any kind of Cirex International, Inc." That order further directed "Cirex International, Inc. and any persons holding property or assets of Cirex International, Inc. ... [to] deliver to the Receiver any and all properties or assets of Cirex International, Inc. ..." The purpose of the order was to facilitate the collection for the United States of a fine in the sum of $1,035,000 imposed on a principal of Cirex International, Inc.

*See* Exhibit D to the Booth Declaration. Pursuant to that order, Harvey Reich has moved to intervene in 83 Civ. 0369, 83 Civ. 0372, and 83 Civ. 3525 as a claimant. *See* Exhibits F, G and J to the Booth Declaration.

activity, it need not link the seized goods with a particular transaction. *Id.* at 1160. The government may prove probable cause by direct or circumstantial evidence. *United States v. $2,500 in United States Currency*, 689 F.2d 10, 16 (2d Cir.1982), *cert. denied*, 465 U.S. 1099, 104 S.Ct. 1591, 80 L.Ed.2d 123 (1984).

The Court of Appeals in this circuit has recognized that it is not always easy for the government to distinguish those dollars in a bank account that are linked to narcotics from dollars derived from legitimate activities. As a result, it has made clear that once the government has shown probable cause linking some money in an account with drug trafficking, then "the risk of uncertainty in determining the traceability of [the money linked to drugs] is placed squarely on the claimant." *United States v. Banco Cafetero Panama, supra*, 797 F.2d at 1161. In other words, once there is probable cause linking some money in an account to drugs, then "there will be probable cause to believe that the bank account contains 'traceable' [funds] *and* probable cause to believe that a withdrawal contains such 'traceable' [funds].... The burden will then be on the claimant to demonstrate that no portions of the account or no portions of the withdrawal, depending on which the government pursues," can be linked to drugs. *Id.* at 1160–61 (emphasis in original).

■ In the case at bar, the government has more than met its burden of establishing probable cause. As mentioned above, finding a link between Orozco's money laundering operation at Cirex and drug trafficking was necessary to sustain his drug conspiracy conviction at trial. Given the evidence introduced at trial, there can be no question about probable cause with respect to the accounts held in Orozco's name or Cirex's name, or the cash found at Cirex. The same is true of the account in the name of Global Bay. As noted above, evidence at trial made clear that Global Bay was used by Orozco as a depository of money. Finally, Cespedes' testimony that he allowed Orozco to channel money through his bank accounts and that he acted as a nominee for an Orozco account is sufficient to sustain the government's burden with respect to the accounts in Cespedes' name.

The four claimants have offered no evidence and little argument to meet their burden of proof. Two claimants, Global Bay and Orozco, did not respond to the government's motion for summary judgment. Mr. Reich, the receiver of Cirex, filed a memorandum of law and a 3(g) statement. The 3(g) statement raised five legal questions but contained no facts. Cirex filed a memorandum of law, a 3(g) statement that raised questions similar to those raised by Mr. Reich, and an attorney's affidavit.

■ In their papers, Mr. Reich and Cirex raise two arguments worthy of attention.[7] First, they argue that the particular accounts before the court are not subject to forfeiture because they were not listed in the indictment or mentioned at trial. Memorandum of Law of Intervenor-Claimant at 5–6; Rover Affidavit at ¶ 6. In support of this argument, Mr. Reich points out that no account in Cirex's name appeared in the indictment or at trial. Memorandum of Law of Intervenor-Claimant at 5–6. This argument can be rejected swiftly. As noted above, the government need only prove that there are reasonable grounds to believe that particular funds or accounts are

---

7. Cirex also argues that there is some relevance to the fact that it was not a defendant in the criminal trial. The court fails to see any relevance to its status in the original proceeding. Cirex has had ample opportunity to submit affidavits or other evidence rebutting or casting doubt on evidence introduced at trial.

In addition, Mr. Reich argues that "there is no direct authority for the Government's position that evidence subsequently acquired at a criminal trial can justify a seizure made many months before." Receiver's Brief at 4. The government, of course, acquires evidence prior to trial and presents it at trial. It is only natural for the government to rely on evidence presented at a later trial to support a pretrial seizure. *See generally United States v. Banco Cafetero International*, 608 F.Supp. 1394, 1405 (S.D.N.Y. 1985) (Goettel, J.), *aff'd sub nom. United States v. Banco Cafetero Panama*, 797 F.2d 1154 (2d Cir.1986).

linked to narcotics. The evidence at trial showed that Cirex laundered millions of dollars traceable to drug trafficking through many accounts held in many names. The government need not adduce evidence as to each specific account. *See United States v. Banco Cafetero Panama, supra,* 797 F.2d at 1160.

The second serious argument, offered by Mr. Reich alone, is that since Orozco admitted to the undercover agent that 60 to 70 percent of the money Cirex laundered came from drug trafficking, 30 to 40 percent must have come from legitimate sources and is not subject to forfeiture. Memorandum of Law of Intervenor-Claimant at 6. This argument, too, falls short. First of all, there is no reason to believe that Orozco was not significantly underestimating the percentage of money that came from narcotics when he confided in someone he believed to be a bank officer. That aside, under the Second Circuit's decision in *United States v. Banco Cafetero Panama, supra,* 797 F.2d 1154, once *any* money in an account is linked to drugs, the claimant has the burden of proving that the money remaining in the account is not forfeitable. *Id.* at 1160–61. Here the claimants have offered no such evidence. In the absence of any proof to the contrary, the court must assume that all money in the seized accounts is traceable to drug trafficking.

In sum, the claimants have done nothing to sustain their burden of proof. They offer "nothing but speculation," and "speculation must leave the burdened party the loser." *United States v. Fleming,* 677 F.2d 602, 610 (7th Cir.1982). Accordingly, the government's motion is granted.

IT IS SO ORDERED.