# In the

# United States Court of Appeals

## For the Seventh Circuit

———————

No. 04-1938

SAMMY KNOX,

*Petitioner-Appellant,*

v.

UNITED STATES OF AMERICA,

*Respondent-Appellee.*

———————

Appeal from the United States District Court for
the Northern District of Illinois, Eastern Division.
No. 02 C 7392 (89 CR 908)—**Matthew F. Kennelly**, *Judge.*

———————

ARGUED JANUARY 18, 2005—DECIDED MARCH 9, 2005

———————

Before POSNER, EASTERBROOK, and ROVNER, *Circuit Judges.*

EASTERBROOK, *Circuit Judge.* Sammy Knox is serving a life sentence for racketeering. The predicate felonies include drug offenses. He was a leader of the El Rukn street gang, which among its other unlawful activities distributed large quantities of cocaine and heroin until a series of prosecutions decapitated the organization. Knox's initial convictions and life sentence were vacated because of prosecutorial misconduct, see *United States v. Boyd*, 55 F.3d 239 (7th Cir. 1995), but the result of the second trial was the same, and we rejected all of the 20 arguments presented on the gang

leaders' appeals. See *United States v. Boyd*, 208 F.3d 638 (7th Cir. 2000). Three months after our decision, the Supreme Court released *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and it directed us to reconsider in light of that decision. 531 U.S. 1135 (2001). The jury that convicted Knox had not determined beyond a reasonable doubt either which drug (or drugs) the gang distributed, or in what quantity; until *Apprendi* those had been issues for the judge to resolve on the preponderance standard. See *United States v. Edwards*, 105 F.3d 1179 (7th Cir. 1997), affirmed, 523 U.S. 511 (1998). We concluded, however, that a new trial was unnecessary

> because the evidence shows beyond any possible doubt that the defendants, whose vast drug conspiracy is detailed in the opinion that the Court remanded, *United States v. Boyd*, 208 F.3d 638 (7th Cir. 2000), were responsible for such a large quantity of drugs that had the jury been correctly instructed, it would have found them guilty beyond a reasonable doubt of the offenses for which they were sentenced.

*United States v. Green*, No. 98-2036 (7th Cir. Apr. 3, 2001) (unpublished order). The Supreme Court denied Knox's request for certiorari. 534 U.S. 968 (2001). The prosecution, commenced in 1989 and growing out of events that date back to the 1960s, was over.

Before long, however, Knox was back in court seeking collateral relief under 28 U.S.C. §2255. He contended that his lawyer had rendered constitutionally deficient assistance by omitting a 21st issue on the second appeal: a claim that Knox calls "*Orozco-Prada* error" after *United States v. Orozco-Prada*, 732 F.2d 1076, 1083-84 (2d Cir. 1984). The second circuit held in *Orozco-Prada* that, when a jury fails to determine which drug the defendants distributed, the judge must assume when imposing sentence that the drug was whichever carries the lowest maximum penalty. For

Knox that would be Talwin rather than marijuana, cocaine, or heroin, which the indictment also charged. (Talwin, a narcotic pain reliever, is a schedule IV controlled substance, and with Knox's criminal history the maximum penalty for its distribution would have been six years.) According to Knox, an "*Orozco-Prada* error" cannot be harmless, so his appellate lawyer's poor selection of issues necessarily is prejudicial. The district court was unpersuaded and denied the petition. *Knox v. United States*, 2004 U.S. Dist. LEXIS 4084 (N.D. Ill. Mar. 9, 2004). Knox's appeal places his case before us for the fourth time.

To obtain relief, Knox must establish not only that his lawyer furnished objectively deficient assistance—a quality so low that he was not acting as the "counsel" required by the sixth amendment—but also that this shortcoming caused prejudice. Knox cannot satisfy either requirement. He wants us to ignore everything his lawyer did for him and concentrate on one supposed failing. Yet courts assess the lawyer's work as a whole. *Strickland v. Washington*, 466 U.S. 668, 690 (1984); *Holman v. Gilmore*, 126 F.3d 876, 881-84 (7th Cir. 1997). Knox's lawyer managed to get his first conviction annulled, despite the overwhelming evidence of guilt, and defended that victory against a determined appeal by the United States. The second trial was vigorously contested, as was the second appeal. Lawyers must curtail the number of issues they present, not only because briefs are limited in length but also because the more issues a brief presents the less attention each receives, and thin presentation may submerge or forfeit a point. "Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues." *Jones v. Barnes*, 463 U.S. 745, 751-52 (1983). *Jones* rejected a contention that the sixth amendment requires appellate counsel to raise all non-frivolous issues.

Raising 20 weak issues would not excuse omitting a sure winner, but that is not a plausible description of how Knox's lawyer proceeded. Our opinion in *Edwards*, which supplied the controlling law in this circuit when Knox's lawyer had to choose what issues to present, had rejected the holding of *Orozco-Prada*. We observed that *Orozco-Prada* predated the Sentencing Reform Act (which took effect in 1987) and that under the Sentencing Guidelines the judge alone determines the kind and quantity of drugs. The Supreme Court affirmed *Edwards* in 1998. Reliance on the second circuit's 1984 decision would not have been a wise appellate strategy on an appeal to this circuit argued (as Knox's was) in September 1999.

The Supreme Court had *Edwards* and *Almendarez-Torres v. United States*, 523 U.S. 224 (1998), under advisement at the same time. The four Justices who dissented in *Almendarez-Torres* staked out a position that was to become the majority in *Apprendi* when one Justice changed sides. *Edwards*, by contrast, was unanimous—but the price of unanimity was ducking the question that so divided the Justices in *Almendarez-Torres* and *Apprendi*. Although *Edwards* held that the judge determines both the type and quantity of drugs under the Sentencing Guidelines, it observed that "the sentences imposed here were within the statutory limit applicable to a cocaine-only conspiracy" (523 U.S. at 515). At this point the Court dropped a "cf." citation to *Orozco-Prada*, which Knox says must mean that the Supreme Court endorsed its holding. But this is not what "cf." means, nor could it make sense to say that by *affirming* a decision that had rejected *Orozco-Prada*, the Supreme Court managed to adopt *Orozco-Prada* indirectly.

Instead of approving either *Orozco-Prada* or this circuit's contrary view, the Court in *Edwards* reserved judgment on what issues, if any, must be presented to a jury to support a particular prison term in a prosecution under 21 U.S.C. §841. *United States v. Booker*, 125 S. Ct. 738, 754 (2005), re-

iterates that *Edwards* left this question open. In the wake of *Apprendi* this court held that drug type and quantity must be charged in the indictment and proved beyond a reasonable doubt to the extent that they raise the statutory maximum punishment beyond 20 or 40 years, the caps corresponding to particular quantities of drugs, but that juries need not resolve the precise amount for which the defendant is responsible. See *United States v. Nance*, 236 F.3d 820, 824-25 (7th Cir. 2000).

In retrospect, then, Knox's jury should have been told to determine whether he and his confederates agreed to distribute more than 5 kilograms of cocaine, or 50 grams of crack, or 1 kilogram of heroin, or 500 grams of methamphetamine, or any of the other kind-and-quantity combinations that make a person eligible for life imprisonment under §841(b)(1)(A). No more precision was necessary as of 2000 (or today). *Nance* overruled decisions, including *Edwards*, that had allocated these factual determinations to the judge. (*Booker* in turn disapproved *Nance* and held that all factual matters that raise a mandatory guideline range must be established to the jury's satisfaction, and the Court implemented that rule by making the Sentencing Guidelines non-mandatory.) Had Knox's lawyer invoked *Orozco-Prada* in 1999, he would have lost under our decision in *Edwards* plus other pre-*Apprendi* decisions. See, e.g., *United States v. Jackson*, 207 F.3d 910 (7th Cir. 2000), remanded, 531 U.S. 953 (2000), decision on remand, 236 F.3d 886 (2001).

What is more, even under *Nance* and other post-*Apprendi* decisions, a jury does not need to determine what other drugs the El Rukns distributed, once it finds that the gang handled 50 grams of crack, which would itself support life imprisonment for all of the leaders. See *United States v. Hoover*, 246 F.3d 1054, 1058 (7th Cir. 2001). A lawyer who concentrates attention on issues that have the best chance of success does not display objectively deficient performance, and thus does not render ineffective assistance of counsel.

A failure to anticipate shifts in legal doctrine cannot be condemned as objectively deficient. See, e.g., *United States v. Smith*, 241 F.3d 546, 548 (7th Cir. 2001) (failure to anticipate *Apprendi* is not ineffective assistance).

For what little significance it has, we add that Knox did not suffer prejudice from his lawyer's omission. We held in 2001 that the *Apprendi* problem was harmless because any jury would have found beyond a reasonable doubt that the El Rukns distributed quantities of drugs that exposed the leaders to life in prison. Knox insists that an "*Orozco-Prada* error" differs fundamentally from an *Apprendi* error, but we do not see how. *Orozco-Prada* held that the kind of drugs is a jury issue; *Apprendi* and *Booker* hold that both kind and quantity are jury issues (if the answer sets the maximum lawful penalty). One is a subset of the other. Both *Apprendi* and *Orozco-Prada* could be rephrased, with equal plausibility, as holding that, if a jury does not make certain findings, then the judge cannot impose a sentence higher than the lowest statutory cap for any of the charged conduct. That's why we held in *United States v. Bjorkman*, 270 F.3d 482, 490-92 (7th Cir. 2001), that *Apprendi* does not make drug type or quantity an "element" of the §841 offense: withholding type or quantity from the jury reduces the maximum punishment but does not lead to an acquittal. See also *United States v. Brough*, 243 F.3d 1078 (7th Cir. 2001). Our harmless-error determination in 2001 covered *both* kind and quantity; it excludes any possibility that Knox is culpable for Talwin alone.

*United States v. Cotton*, 535 U.S. 625 (2002), holds that an *Apprendi* error does not require automatic reversal. In addition to *Cotton* see, e.g., *Neder v. United States*, 527 U.S. 1 (1999); *Johnson v. United States*, 520 U.S. 461 (1997), which permit application of the harmless-error and plain-error standards when mistaken instructions fail to elicit the jury's decision on important questions. As the Court observed in *Schriro v. Summerlin*, 124 S. Ct. 2519, 2525 (2004), juries

are not necessarily more accurate than judges at finding facts. That's one reason why *Apprendi* and its successors do not apply retroactively on collateral attack. See *McReynolds v. United States*, ___ F.3d ___ (7th Cir. Feb. 2, 2005); *Curtis v. United States*, 294 F.3d 841 (7th Cir. 2002). It is also why, as *Schriro*, *Neder*, and *Johnson* hold, judicial resolution of a factual dispute that should have been presented to a jury is not a "structural error" that requires automatic reversal. The district judge determined that Knox is responsible for distributing a quantity of cocaine that calls for a life sentence; we held in 2001 that allowing a judge rather than a jury to make this decision was a harmless error given the strength of the evidence; that decision also shows that Knox did not suffer prejudice for purposes of the right to counsel.

AFFIRMED

A true Copy:

Teste:

_____
*Clerk of the United States Court of Appeals for the Seventh Circuit*

USCA-02-C-0072—3-9-05