**NONPRECEDENTIAL DISPOSITION**
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued February 15, 2008
Decided April 4, 2008

**Before**

JOEL M. FLAUM, *Circuit Judge*

DIANE P. WOOD, *Circuit Judge*

TERENCE T. EVANS, Circuit Judge

No. 07-1331

| | |
|---|---|
| UNITED STATES OF AMERICA,, | Appeal from the United States |
| *Plaintiff-Appellee,* | District Court for the Northern District of Illinois, Eastern Division. |
| *v.* | |
| | No. 03 CR 725 |
| MICHAEL PARTEE, | |
| *Defendant-Appellant.* | John W. Darrah, *Judge.* |

**O R D E R**

Unaware that he was being watched by a van full of federal agents and City of Chicago police officers, Michael Partee, a felon, sold drugs to a government informant, in exchange for both money and guns (a Mac machine gun and two 9 mm Beretta pistols). Partee was charged with being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1), and with distribution of a controlled substance, in violation of 21 U.S.C. § 841(a)(1). After a trial to the court, he was convicted on both counts. The judge sentenced him to a term of 120 months in prison on the gun count and 323

months on the distribution count, the terms to run concurrently. Partee appeals both his conviction and his sentence.

The problem Partee sees with his conviction is that the indictment alleges that he distributed crack, whereas the district judge found that the government had not proven beyond a reasonable doubt that the substance was, in fact, crack. Partee had stipulated that the substance was "cocaine base," and the judge found that Partee was guilty of possession with the intent to distribute a schedule II controlled substance. By that finding, which did not say, as did the indictment, that he distributed crack, Partee says that the judge impermissibly amended the indictment, broadening the charge against him. There is a significant question whether this issue was preserved for appeal. Partee raised it in a pro se motion during the time he was represented by counsel. Nevertheless, we will proceed as if it were preserved.

In any case, the claim must fail. Drug type and quantity are not elements of a violation of 21 U.S.C. § 841(a)(1), which prohibits the distribution of a "controlled substance." We recently confronted an almost identical issue in United States v. Kelly, ___ F.3d ___, 2008 WL 623779 (7th Cir. Mar. 10, 2008). Kelly contended that the evidence was insufficient to prove that the cocaine he possessed was crack cocaine. We said:

> The particular type and amount of cocaine that a defendant possesses are not elements of the section 841 offense. See, e.g., United States v. Gougis, 432 F.3d 735, 745 (7th Cir. 2005); Knox v. United States, 400 F 3d 519, 523 (7th Cir. 2005). So long as Kelly possessed, with the appropriate mental state, a detectable amount of a substance or mixture containing cocaine base-and Kelly does not dispute that he possessed some form of cocaine base-then he is guilty of violating section 841.

We pointed out that the relevance of the drug type and quantity determinations is in their effect on the sentence. For purposes of the conviction, there is no dispute that the substance Partee traded for guns was a schedule II controlled substance.

That the judge found that the government had not proved that the substance was crack brings us to another of Partee's arguments. Partee says it was error for the court

to grant the government's request to present evidence at sentencing that the controlled substance was crack. The government wanted Partee sentenced for the distribution of cocaine base, which might seem to be no problem because, as we said, at trial he conceded that the substance was cocaine base. The problem is that, while crack is cocaine base, chemically other substances are also cocaine base. Kelly; United States v. Edwards, 397 F.3d 570 (7th Cir. 2005). But the sentencing guideline for cocaine base applies only to crack, not to other substances: "'Cocaine base,' for the purposes of this guideline, means 'crack'" U.S.S.G. § 2D1.1(c), Note (D) (2003). So at sentencing the government wanted to pin down that the cocaine base involved in this case was crack.

The evidence in the trial record, in addition to the stipulation that the substance was cocaine base, was the testimony from an agent that he recovered an ounce of an off-white, chunky substance wrapped in a small plastic bag and that, based on his education and experience, crack cocaine is a rocky, chunky, off-white substance. After trial, the government had the substance tested by a forensic chemist, who concluded that it was, in fact, crack. The government argued that the opinion of the chemist was admissible at sentencing for the purpose of imposing the statutory minimum sentence and applying the proper base offense. We agree. The evidence was properly admitted. A sentencing judge has discretion to look at a wide variety of information when imposing a sentence. The determination of just what type of drug is involved is a particularly important issue at sentencing. And, of course, facts relevant to sentencing can be determined by the judge by a preponderance standard. Harris v. United States, 536 U.S. 545 (2002); United States v. Hernandez, 330 F.3d 964 (7th Cir. 2003).

Partee also raises a number of other sentencing issues, involving whether his possession of guns on a prior occasion constitutes relevant conduct and whether or not he has two prior felony convictions for either a crime of violence or a controlled substance offense. The latter issue is relevant to both counts of conviction. For the § 922(g)(1) firearms conviction, the offense level is directly affected by such convictions under U.S.S.G. § 2K2.1(a). On the narcotics count, Partee can be a "career offender" under U.S.S.G. § 4B1.2(b) if he has two relevant prior convictions. It may also affect his statutory maximum sentence.

The conviction at issue is a conviction in Georgia for narcotics offenses. Partee contends it does not qualify as a controlled substance offense under the guidelines. Partee says that although he was charged in Georgia with selling cocaine, the sentence

he received was necessarily only for possession, which is not a controlled substance offense for guideline calculations.

For both U.S.S.G. § 2K2.1 and § 4B1.1, a controlled substance is defined in § 4B1.2(b) as follows:

> The term "controlled substance offense" means an offense under federal or state law, punishable by imprisonment for a term exceeding one year, that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense.

It is clear that in Georgia Partee was charged with possessing <u>and selling</u> cocaine. But he was sentenced to two years imprisonment, which was below the 1996 mandatory minimum of five years for sale of cocaine. For simple possession, the sentence should have been "not less than two years nor more than 15 years." O.G.C.A. § 16-13-30.

It is somewhat mysterious that Partee's sentence was so light. There is no explanation in the record. In this situation, to try to determine what was going on, the court may examine the charging papers and the plea colloquy to determine what the offense was. <u>United States v. Sperberg</u>, 432 F.3d 706 (7th Cir. 2005). That is what Judge Darrah did in Partee's case.

The judge explicitly stated that he considered papers submitted in connection with the Georgia conviction. Information in those papers showed that count two of the indictment alleged that Partee sold cocaine. Further, the transcript of the plea hearing and the judgment of conviction substantiate that he was convicted of selling cocaine. The judge found that the government had met its burden in establishing that the Georgia conviction was a conviction for a controlled substance offense under U.S.S.G. § 4B1.2.

Our <u>de novo</u> review causes us to draw the same conclusion. <u>See</u> <u>United States v. Cole</u>, 298 F.3d 659 (7th Cir. 2002). The only question about the conviction comes from the fact that Partee was sentenced to two, not five, years in prison. The record from the Georgia court shows that the conviction was for selling, not merely possessing cocaine,

and it is a reasonable conclusion that Partee caught a break on the sentence. The sentence may be a reflection of very small sales. One count involved a sale of $20 worth of cocaine. A reasonable inference might be that the other sale was also small so the judge cut him a break. But nevertheless the conviction qualifies as a controlled substance offense, and in the case before us, Partee was properly sentenced as a career offender.

Partee's offense level for the gun count was increased by relevant conduct. The government argued and the district judge ruled that an incident six months earlier was relevant conduct to the offense, in which Partee sold drugs in exchange for guns. In the earlier incident, several firearms, drugs, and money were found in the search of a home, in which Partee and his girlfriend were present. Partee acknowledged that he knew the guns were there.

In assessing whether offenses are part of the same course of conduct, courts look for a strong relationship between the uncharged conduct and the offense. The conduct must be part of the same course of action or common scheme or plan that give rise to the conviction. The government must demonstrate a significant similarity, regularity, and temporal proximity between the two incidents. United States v. Ortiz, 431 F.3d 1035 (7th Cir. 2005). In this case, there is a significant gap in time between the search of the house and the offense of conviction. Furthermore, the only similarity is that there were guns and drugs involved in both incidents. But the offense conduct involved a sale of guns in exchange for drugs. No sales were observed during the search of the house and, of course, other than Partee, the participants were not the same. We are not convinced that the search of the house qualifies as relevant conduct.

Even if an increase for relevant conduct were proper in this case, the guideline calculations were erroneous and the case must be remanded for resentencing. For some reason, the calculations here have caused an inordinate amount of trouble. The presentence report was amended several times. Then the calculations the district court made were in error. In this appeal, the government conceded there were errors made in the district court and outlined what it considered the correct calculations. Then, two weeks before argument, the government submitted a letter saying the calculations in its brief were in error; it submitted yet another calculation.

We will explain in a bit of detail. In the district court, first an error was made in the calculations for the gun charge. The base offense level under U.S.S.G. § 2K2.1 was

correctly found to be 26. Then a 4-level increase was applied for relevant conduct and a 2-level increase for an obliterated serial number on a Mac 10 that was recovered from Partee during the house search. Adding these together, the judge concluded that the offense level for this count was 32. This, as we shall see, is where the error creeps in. The judge then applied a 4-level increase for possessing a firearm in connection with another felony under U.S.S.G. § 2K2.1(b)(5), giving an offense level of 36. Because it was greater than the level for the narcotics charge, this offense level was the combined offense level for the two counts of conviction. But the problem in this calculation is that U.S.S.G. § 2K2.1(b)(4) states that the cumulative offense level "shall not exceed 29." Even with relevant conduct, the offense level, before the subsection (5) increase, could only be 29, not 32. Then the 4-level increase for possessing a firearm in connection with another felony under subsection (5) would be added to 29, making the offense level 33, not 36. However, as we have eliminated increases based on relevant conduct, the § 2K2.1(b)(5) increase must be added to 26, making the offense level on count one 30.

As to count two, in its brief in this court the government originally said the offense level was correctly calculated as 32. But in its letter, the government changed its mind and argued that the offense level on count two was also incorrectly calculated. The offense level of 32 had been arrived at because under § 841(b)(1)(C) the statutory maximum for a cocaine offense involving under 500 grams is 20 years. Given that statutory maximum, under the career offender table-- U.S.S.G. § 4B1.1(b)(C)–the offense level would be 32. But in its letter the government says because it had filed a notice of enhanced penalties under 21 U.S.C. § 851, the statutory maximum for the drug offense in count two was 30 years because of Partee's prior felony drug conviction. As a result, under U.S.S.G. § 4B1.1(b)(B), Partee's offense level was 34. This would then be the combined offense level.

We could legitimately wonder whether this is the final calculation. In any case, it is obvious that the case must be remanded for resentencing, which must reflect our determinations regarding the Georgia conviction and relevant conduct. At the resentencing Partee may contest any other aspect of the calculations as well as any other factors which may affect the appropriate sentence.

Accordingly, the judgment of conviction is AFFIRMED; the sentence is VACATED and the case is REMANDED for resentencing.