**Richard MORALES Petitioner,**

v.

**UNITED STATES of America, Respondent.**

**No. CRIM 3:94CR112AHN.**
**No. CIV. 3:00CV1870AHN.**

United States District Court,
D. Connecticut.

Nov. 12, 2003.

Richard Morales, Lewisburg, PA, Pro se.

James J. Ruane, Bridgeport, CT, for Richard Morales.

Brian E. Spears, Robert M. Appleton, Theodore B. Heinrich, U.S. Attorney's Office, Bridgeport, CT, Christopher F. Droney, James I. Glasser, Jeffrey A. Meyer, Jonathan Biran, Leonard C. Boyle, Shawn J. Chen, William J. Nardini, U.S. Attorney's Office, New Haven, CT, Joseph W. Martini, Pepe & Hazard, Southport, CT, for United States of America.

### RULING ON PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2255

NEVAS, Senior District Judge.

Petitioner Richard Morales seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2255, requesting that his September 1995 conviction be vacated. Morales was convicted by a jury for racketeering and racketeering conspiracy, 18 U.S.C. §§ 1962(a) & (d), violent crimes in aid of racketeering, 18 U.S.C. § 1959, conspiracy to distribute narcotics, 21 U.S.C. § 846, and possession with intent to distribute cocaine base, 21 U.S.C. § 841. He was sentenced on January, 29, 1996, to six concurrent life terms. He now challenges his conviction on several grounds, including ineffective assistance of counsel and juror bias. As set forth below, his petition [Dkt. # 1666] is denied.

### BACKGROUND

Morales was a member of a Connecticut narcotics racketeering enterprise known as the "Latin Kings." He was tried before a jury and was found guilty of all twelve counts against him. In particular, the jury found that as the enterprise's Director of Security, Morales held a leadership role, and, to that end, engaged in narcotics trafficking, assault, and murder. A more detailed account of those events is contained in *United States v. Diaz*, 176 F.3d 52, 73 (2d Cir.1999).

### DISCUSSION

Morales bases his habeas petition on several grounds. He claims ineffective assistance of counsel, that he did not receive a fair trial because of a biased juror, that the sentence on the narcotics conspiracy count was impermissibly enhanced in violation of *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), and that it was improper for U.S. Magistrate Judge Fitzsimmons to preside over jury deliberations, for one day, without his prior consent. The government contends that Morales's petition is without merit and should be denied.

### A. *Ineffective Assistance of Counsel*

Under *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), a habeas petitioner claiming ineffective assistance of counsel must make a two-part showing. First, the petitioner must demonstrate that counsel's performance was deficient—that is errors were made of such serious magnitude that petitioner was deprived of the "counsel" guaranteed by the Sixth Amendment. *Id.* Second, the petitioner must show that there is a reasonable probability that, but for counsel's deficient performance, the result would have been different. *Id.* at 694.

Morales's ineffective assistance of counsel claim asserts that appellate counsel failed to 1) argue that the trial court improperly closed the courtroom during voir dire; 2) challenge the trial court's plain error in allowing Deputy U.S. Marshal James Killoy to allegedly escort the jury when he was also testifying at the trial as a government witness; and 3) dispute the sentence imposed on the conspiracy to distribute narcotics count. The court finds no merit in any of these claims.

#### 1. *Closure of the Courtroom*

Morales claims that the trial court deprived him of his Sixth Amendment right to a public trial by ordering the courtroom closed during jury selection. Based on that assertion, he argues that his appellate counsel acted deficiently by failing to raise that issue on appeal, and he was prejudiced as a result. The government contends that Morales's appellate counsel properly declined to appeal the closure issue because the trial court did not actually close the courtroom.

■ The court agrees with the government's position. While it is clear that a court is limited in its discretion to bar the public from proceedings within a courtroom, not every courtroom closure deprives a defendant of the right to a public trial under the Sixth Amendment. *See Peterson v. Williams*, 85 F.3d 39, 42 (2d Cir.1996) (stating that a courtroom can be closed if exigent circumstances so require). However, as the government argues here, the question of whether the closure was justified need not be addressed because the court never ordered that the courtroom be closed. The court simply stated that:

> Because at this point I don't know how many jurors we'll have left in the pool, I'm going to guess it's going to be somewhere around 50 or so, give or take. All of the rows in the spectator section of the courtroom are going to be used for the jurors to be seated. I'm not going to permit any spectators to be seated among the prospective jurors so that I want counsel to be on notice that on Friday there will be no room for any spectators. All of those seats are going to be taken by prospective jurors. So everyone should be aware of that. [6/28/95 Tr. at 148.]

The transcript clearly reflects that the court *did not* bar any specific person from the proceedings, or in any way prohibited the public from being present. The court simply gave notice to counsel that the gallery would be reserved for the prospective jurors, so that a final jury for Morales's trial could be selected.

■ When selecting a jury, as in all other aspects of courtroom proceedings, the court is inherently empowered to keep order in the courtroom, and to proceed fairly and efficiently. *See Press–Enterprise Co. v. Superior Court of California*, 464 U.S. 501, 512, 104 S.Ct. 819, 78 L.Ed.2d 629 (1984) (stating that a trial judge must at all times maintain control over the jury selection process); *see also United States v. Fay*, 350 F.2d 967, 971 (2d. Cir.1965). Here, the court's act of reserving the gallery to accommodate the prospective jurors was well within that discretion. The right to open proceedings, which underlies Morales's claim, is meant to ensure that standards of fairness are observed. *See, e.g., Press–Enterprise*, 464 U.S. at 509, 104 S.Ct. 819; *Estes v. Texas*, 381 U.S. 532, 538–42, 85 S.Ct. 1628, 14 L.Ed.2d 543 (1965) (reasoning that the purpose for requiring a public trial was to guarantee that the accused would be fairly dealt with and not unjustly condemned). In this case, the court sought to ensure that a jury for Morales's trial could be picked in an efficient and orderly manner, with the aim of securing Morales a fair and impartial jury. *See Press–Enterprise Co.*, 464 U.S. at 510, 104 S.Ct. 819 (stating that the accused has a right to fundamental fairness in the jury selection process).

Many aspects of this case justified the court's action at the time. Morales was tried with many other co-defendants. Had the court allowed spectators to sit among the panel of potential jurors, an already complicated situation would have quickly become more confusing and problematic. Certainly, the parties' exercise of peremptory strikes would have been hindered by allowing spectators to co-mingle with the prospective jurors. There is also always the fear of juror contamination, particularly in high-profile criminal cases such as Morales's.

■ Nonetheless, for purposes of determining the merits of this issue—framed within the context of an ineffective assistance claim—the court need not give any specific justification. Generally, in cases where a trial judge closes a courtroom over the objection of a criminal defendant, the rule is that the judge must first make

certain findings justifying closure. *See Waller v. Georgia*, 467 U.S. 39, 45, 104 S.Ct. 2210, 81 L.Ed.2d 31 (1984) (setting forth requirements). However, that rule does not apply here because the court never actually closed the courtroom, nor was there a motion to do so, and, at the time, Morales did not object to the court's simple act of reserving the gallery for the prospective jurors. Absent a showing of error,[1] a court is afforded a great amount of deference in the manner by which it maintains order and efficiency in courtroom proceedings. *See, e.g., Grotto v. Herbert*, 316 F.3d 198, 206 (2d Cir.2003) (citing cases). Thus, appealing on the closure issue would have been frivolous, and, even if Morales's counsel had raised it, in all likelihood, the court's action would have been affirmed. In sum, the court cannot conclude that Morales's appellate counsel acted deficiently in failing to raise that issue, and that Morales was prejudiced as a result.

2. *The Presence of U.S. Marshal Killoy*

█ Morales claims that the court committed plain error by allowing Deputy U.S. Marshal James Killoy to escort the jury out of the courtroom during the trial because Deputy Killoy was also a government witness. Based on that assertion, Morales argues that his appellate counsel was ineffective for not raising the issue on appeal. The government contends that appellate counsel properly declined to raise the issue because there is no indication in the record that Deputy Killoy in fact served as an escort to the jury. However, even if he did serve as an escort, it was harmless error. In the context of a habeas petition, the question is whether the basis for such a claim was so clear and tangible that failure by Morale's counsel to raise the argument on appeal constituted ineffective assistance—not whether the court actually committed error in allowing Deputy Killoy to escort the jury, if in fact it may properly be said that he did so.

As a preliminary matter, the court notes that Morales does not submit any evidence showing that Deputy Killoy served as an escort for the jury at his trial, and if he did so serve, for what period of time and to what extent. These are important factors to consider in light of *Turner v. Louisiana*, 379 U.S. 466, 85 S.Ct. 546, 13 L.Ed.2d 424 (1965), because not every instance where a deputy marshal both testifies at trial and serves as a jury escort deprives a criminal defendant of the basic guarantees of trial by jury.

In *Turner*, the Supreme Court held that a criminal defendant was deprived of his right to a fair trial by an impartial jury because two deputy sheriffs, who gave key testimony leading to the defendant's conviction, were in charge of the jury during the trial and had fraternized with them outside the courtroom while in their official capacities. *Id.* at 473, 85 S.Ct. 546. The facts of this case, however, even when construed in the light most favorable to the petitioner, are starkly different. As the government points out, Deputy Killoy's testimony at the trial was both brief (spanning just more than 10 pages of a trial transcript that is thousands of pages long)

---

1. While the doctrine of harmless error does not apply in cases where a defendant claims that his right to a public trial has been violated, *see Waller*, 467 U.S. at 49–50 n. 9, 104 S.Ct. 2210, the harmless error standard is appropriate here because Morales's claim, though premised on his Sixth Amendment right to a public trial, actually relates to whether the court abused its discretion in reserving the gallery. As discussed above, in this case the court did not in fact close the courtroom, and there is no evidence that any member of the public, including Morales's friends and family, or the press, was specifically excluded from the proceedings.

and unrelated to the charges for which Morales was convicted.[2] This fact is significant because the decision in *Turner* is premised on the rationale that the defendant's conviction was determined, at least in part, by the great amount of credibility that the jurors attached to the testimony of the two deputy sheriffs that guarded them, by virtue of the personal relationships they developed. *Id.* at 474, 85 S.Ct. 546. *Turner* cited evidence of a "continuous and intimate association" between the deputies and the jury. In fact, one of the deputies described the trial proceedings as an opportunity to "renew old friendships and make new acquaintances among the members of the jury." *Id.* at 473, 85 S.Ct. 546. While *Turner* does not suggest that this kind of fraternization is required before a court may find that a defendant's basic guarantees of trial by jury have been undermined, there is nothing in the record here, even if the court were to assume that Deputy Killoy acted as a jury escort, as Morales insists, to suggest that the fundamental integrity of the trial was compromised in any way. Therefore, the court cannot conclude that Morales's appellate counsel acted deficiently in not raising that issue, and that Morales was prejudiced as a result.

### 3. *Morales's Sentence on the Conspiracy to Distribute Narcotics Count*

The jury found Morales guilty of conspiring to distribute and to possess with intent to distribute heroin, marijuana, cocaine, and cocaine base. However, the jury did not render a special verdict as to the object of the conspiracy, i.e., whether Morales conspired as to one, several, or all of the named narcotics. Thus, Morales claims that, for purposes of sentencing on that count, he should have been deemed convicted only of conspiracy to distribute the narcotic carrying the most lenient statutory sentence—marijuana. Based on that assertion, Morales argues that the case law supporting this contention was so strong and so obvious at the time of his appeal, that his appellate counsel's failure to raise the issue constituted ineffective assistance. The government, on the other hand, contends Morales's appellate counsel was justified in not arguing the issue because the jury also convicted Morales of possession with intent to distribute cocaine base, and that the jury effectively found Morales guilty of conspiring to possess cocaine base, rendering the argument frivolous on appeal.

Neither case cited by Morales supports his ineffective assistance claim. *Edwards v. United States*, 523 U.S. 511, 118 S.Ct. 1475, 140 L.Ed.2d 703 (1998), is inapposite because the Supreme Court did not address whether a judge, when faced with a general verdict, is required to assume that a conviction is based only on the narcotic carrying the lower sentence, since in that case, it did not affect the sentencing range under the Guidelines.

The other case cited by Morales is *United States v. Barnes*, 158 F.3d 662 (2d Cir.1998), a direct appeal taken by one of Morales's co-defendants who was convicted along with Morales on the same narcotics conspiracy count on which Morales now bases his ineffective assistance claim. The holding in *Barnes*—that when faced with a general verdict for conspiracy to possess a controlled substance, and where more than one substance is involved, the trial court must assume that the conviction is for conspiracy to possess the narcotic that carries the most lenient statutory sentence—

---

**2.** Deputy Killoy's testimony was about his involvement in the execution of a search warrant for an apartment in New Haven, the items he seized as a result, and the apparent connection those items had with Maria Vidro, another co-defendant in the case. [*See* 7/20/95 Tr. at 23–34.]

does not properly apply here. *See id.* at 668. Unlike the appellant in *Barnes,* the jury also convicted Morales of possession with intent to distribute cocaine base. As the government points out, the exception adopted by the Second Circuit in *United States v. Orozco–Prada,* 732 F.2d 1076 (2d Cir.1984), is the appropriate case to follow here. In *Orozco–Prada,* which *Barnes* itself affirmed as authorative, *id.* at 672, the court adopted an exception to the general verdict rule, citing *United States v. Peters,* 617 F.2d 503 (7th Cir.1980). *Peters* states that where a jury also convicts a defendant of offenses that were the object of an alleged conspiracy, it is reasonable to conclude that the jury found the defendant guilty of conspiracy to commit that substantive offense. *Id.* at 506. As stated above, since Morales was also convicted for possessing cocaine base, *see* Presentence Report, Worksheet A, the court reasonably inferred that the jury convicted Morales for conspiracy to possess cocaine base despite the absence of a special verdict on that count. Consequently, given the case law, particularly *Orozco–Prada,* and the exception it adopts under *Peters,* as well as the strong presumption in favor of counsel that *Strickland* prescribes, the court cannot find that Morales's counsel acted deficiently in not arguing to correct his sentence on that count.

### B. *Juror Bias*

Morales seeks a new trial based on his allegation that a juror, Juan Aponte, Sr., was purposefully untruthful during voir dire. Morales claims that Aponte failed to disclose to the court that his son, Juan Aponte, Jr., was a member of the Latin Kings. He contends that Aponte harbored a hatred for all Latin Kings and that Aponte was not entirely candid at voir dire in hopes of being chosen as a juror. Morales believes that Aponte sought to avenge his son's conviction by sending all members of the Latin Kings to jail. The gov-

ernment, however, argues that Morales is procedurally barred from raising the juror bias issue for the first time in a habeas petition.

The juror non-disclosure question is controlled by *United States v. Shaoul,* 41 F.3d 811, 815 (2d Cir.1994). While Morales did not raise that issue on direct appeal, he may raise it here in a collateral attack pursuant to § 2255. Nevertheless, the hurdle that he must meet—"cause" for his failure to raise the issue on direct appeal, as well as "actual prejudice" at trial—is much greater. *See United States v. Rodgers,* 101 F.3d 247, 252 (2d Cir.1996) (*citing U.S. v. Frady,* 456 U.S. 152, 166, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982)).

Clearly, allegations of juror bias are matters of constitutional proportion and, if proven, would result in actual prejudice to a defendant. The question here is whether Morales had substantial cause for not making a contemporaneous objection at trial as well as not later raising the issue on direct appeal. Morales claims that he did not become aware of Aponte's bias against the Latin Kings until after his trial, when an interview with Aponte's son was published in a newspaper on September 9, 1996. The government, instead, contends that Morales was aware of the Aponte issue beforehand because Robert Burgos, one of Morales's co-defendants, raised it on appeal. However, simply because Burgos raised Aponte's alleged bias, *see Diaz* 176 F.3d at 114–15, does not make it entirely proper to impute that same knowledge to Morales. While on its face, Morales's argument falls short of establishing the requisite showing of cause, the court nonetheless addresses the juror bias issue because, even if Morales were to show sufficient cause, he has not made the required showing as to juror non-disclosure under *Shaoul.*

In *Shaoul,* the Court of Appeals held that in order to obtain a new trial, a defendant must show both that a juror gave a dishonest answer, and that the correct answer would have provided a basis for the defendant to challenge the juror for cause. *Id.* at 816. This is a two-part test. The record shows that Aponte was extremely candid at voir dire. [*See* 6/28/95 Tr. at 44–63.] He stated outright that his son was in state custody on a drug and weapons conviction, that he had safety concerns about serving as a juror because the neighborhood in which he and his family lived was rife with gang activity, and that though he would probably find it difficult to give the same consideration to the testimony of an alleged or actual gang member over that of a police officer, he would try his best. After further questioning by the court, Aponte stated that despite those factors, he could render a fair and impartial verdict. [Tr. at 63.] Ironically, while both the government and the court were inclined to dismiss Aponte for cause, it was one of the defense attorneys who argued to keep him, apparently because of Aponte's Hispanic ethnicity. [Tr. at 61–62.] Nonetheless, by all reasonable accounts, Aponte sincerely and thoroughly answered the questions posed to him at voir dire.

Furthermore, the newspaper article on which Morales relies as proof that Aponte lied at voir dire, merely mentions that Aponte's son became a Latin Kings member while in prison. (Petitioner's Habeas Petition, Exhibit A.) While the article was indeed published nearly a year before Aponte appeared at voir dire for Morale's trial, it does not by itself prove that Aponte knew of the association, or that Aponte harbored any ill will against alleged Latin Kings members. If anything, the article undercuts Morales's contention. In other words, if Aponte's son did not become a Latin King until after he was convicted on the state drug and weapons charges, it is probable that his later membership in the Latin Kings had nothing to do with his conviction. Thus, aside from his general dislike for drug gangs—something he clearly iterated at voir dire—the court cannot conclude that Aponte harbored any particular bias against the Latin Kings based on his son's prior conviction. Moreover, because Morales neither submits any evidence nor points to any part of the record indicating that Aponte's answers at voir dire were in fact dishonest—and no evidence has been submitted that would render unreasonable the court's presumption that Aponte was ignorant of his son's membership—the first prong in *Shaoul* is not satisfied. The court, therefore, must deny Morales relief on this issue as well. *See id.* at 816.

## C. *Alleged Apprendi Violation*

Morales claims that the sentence he received on Count 27 for narcotics conspiracy violates *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), and therefore should be vacated. Specifically, Morales argues that his sentence was impermissibly enhanced based on facts that were neither submitted to the jury nor proven beyond a reasonable doubt—i.e., that the object of his conspiracy involved cocaine base and not just marijuana. The government contends that any *Apprendi* error that may have occurred was harmless, and that in any event, since Morales's conviction became final before *Apprendi* was issued, it does not apply here.

The jury at Morales's trial did not issue a special verdict on the narcotics conspiracy conviction. That is, while the jury did find Morales guilty of conspiring to distribute and to possess with intent to distribute certain controlled substances, including marijuana, cocaine, and cocaine base, it did not specify which ones—wheth-

er Morales conspired as to one, several, or all of the named narcotics. Morales contends that because the jury did not specifically state the object of the conspiracy, the court should have sentenced him on the narcotic carrying the lowest statutory sentence—marijuana. The court, however, sentenced Morales to conspiracy involving cocaine base, which exceeds the sentence that applies to marijuana, based on the jury's separate finding, as discussed *supra* in section A.3, that Morales possessed, with intent to distribute, cocaine base. Still, Morales argues that the court impermissibly enhanced his sentence in violation of *Apprendi* by using the cocaine base conviction as a basis for sentencing him on the narcotics conspiracy count.

A close look at *Apprendi*, however, reveals that its holding does not apply here. *Apprendi* dealt with a New Jersey statutory scheme that provided for a sentence enhancement if a trial judge found that a criminal defendant was motivated by racial bias. *Id.* at 470, 120 S.Ct. 2348. The Supreme Court struck down the statute because it violated the Fourteenth Amendment right to due process and the Sixth Amendment right to trial by jury. *See id.* at 469, 490, 120 S.Ct. 2348. In so doing, the Court held that any fact, other than a prior conviction, that increases the penalty for a crime beyond the applicable statutory maximum, must be submitted to a jury and proved beyond a reasonable doubt. *Id.* at 490–91, 120 S.Ct. 2348. Morales claims that because the jury returned only a general verdict on the conspiracy count, the court was obligated to impose a sentence consistent with a finding that the object of his conspiracy had been only marijuana because it carried the lowest statutory sentence.

However, as discussed *supra*, under the *Orozco–Prada* line of cases, the trial court properly inferred that cocaine base was an object of Morales's conspiracy since the jury also convicted Morales with actual possession of cocaine base. Given the jury's finding, and the supporting case law discussed above, the court concludes that Morales's claim does not present any procedural safeguard issues—relating either to the right to a jury trial or standard of proof—with which the Court in *Apprendi* was concerned. *See id.* at 488, 120 S.Ct. 2348. Unlike the statutory scheme in *Apprendi*, the trial court in this case did not preclude the jury from assessing the facts that related to the conspiracy count; it merely made a reasonable and permissible inference for sentencing purposes based on the jury's actual findings. *See id.* at 490, 120 S.Ct. 2348. Consequently, since Morales's sentence on the narcotics conspiracy count does not exceed the maximum statutory sentence allowed when cocaine base is involved, *Apprendi* is not implicated.

### D. *The Court's Delegation to Magistrate Judge Fitzsimmons*

Morales argues that it was constitutional error for the court to have allowed Magistrate Judge Fitzsimmons to tend to the jury on its first full day of deliberations, allegedly without his consent. The government argues that Morales is precluded from raising the issue here because he failed to make any contemporaneous objection at trial, and thus waived his right to have an Article III judge present on that day. The court finds that while Morales is not precluded from raising an alleged constitutional issue in a collateral attack, such as here, his claim is without merit because his consent was not required since Magistrate Fitzsimmons's role during jury deliberations was purely ministerial.

The Federal Magistrates Act provides that a "magistrate may be assigned such additional duties as are not inconsistent with the Constitution and laws of the United States." 28 U.S.C.

§ 636(b)(3). Read literally, the Act authorizes any assignment not explicitly prohibited by statute or the Constitution. *Peretz v. United States,* 501 U.S. 923, 931 n. 7, 111 S.Ct. 2661, 115 L.Ed.2d 808 (1991). The generality of the term "additional duties" suggests that Congress intended to give federal judges significant leeway in what should and should not be delegated to a magistrate judge. *Id.* at 932, 111 S.Ct. 2661. Undoubtedly, however, there are limits to the kinds of responsibilities that can be assigned. *See, e.g., United States v. De La Torre,* 605 F.2d 154 (5th Cir.1979). Moreover, where delegation touches upon a defendant's constitutional rights and privileges, consent, whether express or implied, is required. *See Peretz,* 501 U.S. at 932, 111 S.Ct. 2661 (discussing *Gomez v. United States,* 490 U.S. 858, 109 S.Ct. 2237, 104 L.Ed.2d 923 (1989)). Nonetheless, there are certain responsibilities that are so clearly ministerial in nature that a defendant's constitutional rights are not implicated, and thus may be delegated to a magistrate without the need for prior consent from any of the parties. *See, e.g., United States v. Carr,* 18 F.3d 738 (9th Cir.1994); *United States v. Demarrias,* 876 F.2d 674 (8th Cir.1989); *and compare United States v. Musacchia,* 900 F.2d 493 (2d Cir.1990). The court finds that to be the case here.

█ The court appointed Magistrate Fitzsimmons to act as merely an intermediary between itself and the jury, and only for one day. Magistrate Fitzsimmons's communication with the jury was very limited and consisted only of presiding over the court reporter's read-back of certain prior trial testimony. The court had been made aware of the jury's request for a read-back ahead of time and thus had informed both the jury and counsel about what Magistrate Fitzsimmons would be doing that day. [*See* 9/22/95 Tr. at 234–43.] Furthermore, Magistrate Fitzsimmons did not rule on any motions, or exercise any discretion. Clearly, the Magistrate's role was purely a ministerial one and was properly assigned to her pursuant to the additional duties clause. Thus, given that the delegation related to merely an ancillary matter in Morales's trial, and was not of constitutional dimension, Morales need not have consented.

### CONCLUSION

For the foregoing reasons, plaintiff's petition for a writ of habeas corpus [Dkt. # 1666.] is DENIED.