04-0858-pr
Morales v. USA

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

————————————

August Term, 2008

(Argued: August 5,  2009                    Decided: March 11, 2011)

Docket No. 04-0858-pr

————————————

RICHARD MORALES,

*Petitioner-Appellant*,

— v.—

UNITED STATES OF AMERICA

*Respondent-Appellee*.

————————————

Before:

POOLER, HALL, and LIVINGSTON, *Circuit Judges*.

————————————

Richard Morales appeals from a judgment of the United States District Court for the

District of Connecticut (Nevas, *J.*) denying his motion to vacate, set aside, or correct his

sentence pursuant to 28 U.S.C. § 2255.  *Morales v. United States*, 294 F. Supp. 2d 174 (D. Conn.

2003).  Because we conclude that both of his ineffective assistance of counsel claims are without

merit, the district court's judgment is **AFFIRMED**.

AFFIRMED.

_____

BRIAN SHEPPARD, New Hyde Park, NY, *for Petitioner-Appellant.*

SANDRA S. GLOVER, Assistant United States Attorney, (William J. Nardini, Assistant United States Attorney, *of counsel*), for Nora R. Dannehy, Acting United States Attorney District of Connecticut, New Haven, CT, *for Respondent-Appellee.*

_____

HALL, *Circuit Judge*:

Richard Morales appeals from the denial of his section 2255 motion[1] by the United States

District Court for the District of Connecticut (Nevas, *J.*).  *Morales v. United States*, 294 F. Supp.

2d 174 (D. Conn. 2003).  Morales challenged his conviction on the grounds that, *inter alia*, he

did not receive effective assistance of counsel from his trial or appellate lawyers asserting that

they neither protected his Sixth Amendment right to a public trial nor challenged what Morales

contends was an improper sentence on his conspiracy conviction.  Because, based on the record

_____

[1] Section 2255(a) provides that:

> a prisoner in custody under sentence of a court established by an Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such a sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255(a).

2

before the district court, Morales failed to demonstrate plausibly that his counsel acted

unreasonably in connection with what he asserts was a brief closure of the courtroom, the district

court's summary denial of this portion of his motion is **AFFIRMED**.  As to the argument that

counsel's assistance related to sentencing was ineffective, although the district court relied on an

exception to our holding in *United States v. Orozco-Prada*, 732 F.2d 1076 (2d Cir. 1984) that we

have yet to recognize, we **AFFIRM** the district court's ruling because Morales cannot establish

prejudice stemming from his counsel's failure to challenge that sentence on appeal.

## BACKGROUND

On December 8, 1994, Morales was indicted along with 32 other individuals for a variety

of serious crimes related to their participation in the Latin Kings street gang.  Morales, who was

alleged to have been the gang's "Director of Security," was charged with multiple RICO[2] and

VICAR[3] violations, as well as: (i) conspiracy to possess with intent to distribute marijuana,

heroin, cocaine, and cocaine base in violation of 21 U.S.C. § 846 ("Count 27"); and (ii)

possession with intent to distribute 50 or more grams of cocaine base in violation of  21 U.S.C.

§§ 841(a)(1) and 841(b)(1)(A).

In the runup to the trial, the district court decided to reserve the courtroom's gallery for

the day of jury selection.  The court explained to the myriad prosecutors and defense attorneys:

> Because at this point I don't know how many jurors we'll have left in the pool,
> I'm going to guess it's going to be somewhere around 50 or so, give or take.  All
> of the rows in the spectator section of the courtroom are going to be used for the
> jurors to be seated.  I'm not going to permit any spectators to be seated among the
> prospective jurors so that I want counsel to be on notice that on Friday there will

---

[2] Racketeer Influenced and Corrupt Organizations Act.  18 U.S.C. §§ 1961-1968.

[3] Violent Crimes in Aid of Racketeering Activity.  18 U.S.C. § 1959.

be no room for any spectators. All of those seats are going to be taken by prospective jurors. So everyone should be aware of that.

(App. for Appellant's Br. 135.)

On Friday, June 30, 1995, after about a week of voir dire, the district court selected the defendants' jury. That morning, the judge first spoke to certain individual jurors about why they believed they ought to be excused from jury duty, and then brought the jury pool, consisting of 48 persons, into the courtroom so that the prospective jurors could restate their names for the attorneys. Once this was done, the judge sent them back to the jury assembly room and heard peremptory challenges from the parties. Following a short recess, the court brought the remaining prospective jurors back into the courtroom and drew the names of 16 persons to be seated on the jury.

After a three-month trial, Morales was convicted on all counts and sentenced to multiple life-terms in prison.[4] One of the life sentences was imposed on Morales's conviction on Count 27, the drug conspiracy count. Although the jury did not return a special verdict as to which drugs Morales conspired to possess, the district court's sentence was premised on a conspiracy to possess cocaine and/or cocaine base, the maximum penalty for conspiring to possess marijuana or heroin being less than life imprisonment.

---

[4] The district court sentenced Morales to six life-terms, four ten-year terms, and two three-year terms; all to be served concurrently.

4

After this court affirmed his conviction on direct appeal,[5] Morales filed a pro se motion under 28 U.S.C. § 2255(a) to vacate his sentence. He claimed, *inter alia*, that his trial and appellate counsel were ineffective for failing to argue that: (i) the trial court violated his right to a public trial by closing the courtroom during the jury selection; and (ii) because the jury returned a general verdict finding Morales guilty of Count 27, under *United States v. Orozco-Prada*, 732 F.2d 1076 (2d Cir. 1984), and its progeny, Morales should have been sentenced based on the drug carrying the lowest statutory penalty—marijuana. Morales later sought leave to supplement his courtroom closure claim with two affidavits from his girlfriend and the mother of his child, both of whom averred that they were denied entry to the courtroom on June 30, 1995 during jury selection. The court granted his motion for leave to supplement, which was unopposed by the government.

The district court denied Morales's section 2255 motion. *Morales v. United States*, 294 F. Supp. 2d 174, 184 (D. Conn. 2003). Without holding a hearing, Judge Neves—who also presided over the voir dire and trial in question—found, first, that his own statements did not amount to an order closing the courtroom, and, second, that there was "no evidence that any member of the public, including Morales's friends and family, or the press, was specifically excluded from the proceedings." *Id.* at 179 n.1. Concluding, therefore, that Morales could not possibly have suffered an unconstitutional deprivation of his right to a public trial if the courtroom was, in fact, open at all times—and accordingly that any challenge to such a

[5] On direct appeal Morales challenged, *inter alia*, the admission of certain recorded telephone calls into evidence and the sufficiency of the evidence against him on various charges of conspiracy to commit murder and aiding and abetting murder. *United States v. Diaz*, 176 F.3d 52 (2d Cir. 1999).

purported closure "would have been frivolous", *id.* at 179—it thus rejected Morales's claim of ineffective assistance of counsel insofar as it was predicated on counsel's failure to challenge or appeal the supposed courtroom closure. The court did not discuss the two affidavits supporting Morales's motion. Similarly, the district court concluded the claim underlying Morales's argument that his appellate counsel was ineffective for failing to appeal Morales's sentence on the conspiracy charge was without merit.[6] *Id.* It found that Morales was properly sentenced because his case fell within what it believed was an exception to *Orozco-Prada*—namely, that because Morales was convicted of actually possessing cocaine base, it was reasonable to assume that the jury had also found him guilty of a conspiracy related to that drug. Given what it found to be the propriety of the sentence, the district court concluded that Morales's appellate counsel would have had no reason to appeal it. *Id.* at 181

On appeal, Morales challenges the district court's rulings with respect to three of his ineffective assistance of counsel claims: (1) that his appellate counsel was not ineffective for failing to raise the courtroom closure issue on his direct appeal; (2) that his trial counsel was not ineffective for failing to object to the district court's reservation of the gallery; and (3) that his appellate counsel was not ineffective for failing to appeal his life sentence on the conspiracy count. With respect to his first two claims, Morales asserts that the district court should have, at a minimum, held a hearing pursuant to 28 U.S.C. § 2255(b) to "clarify any ambiguities that may exist in the record." (Appellant's Br. 47.)

---

[6] Because the district court determined that Morales's underlying claims were baseless—i.e., that he was properly sentenced and that the courtroom was never closed—it did not reach the issue whether Morales's trial attorney was ineffective.

**DISCUSSION**

Section 2255 allows a federal prisoner to attack collaterally his sentence on the grounds that it was "imposed in violation of the Constitution." 28 U.S.C. § 2255(a). Because the Sixth Amendment provides criminal defendants with the right to *effective* assistance of counsel, *Strickland v. Washington*, 466 U.S. 668, 686 (1984), inadequate representation is a basis for relief under section 2255, *see* Wright, King & Klein, Federal Practice and Procedure: Criminal 3d § 594.1 n.14 (2004) (collecting cases).

To succeed on his ineffective assistance of counsel claims, Morales must show: (1) that his trial and appellate lawyers' performance was deficient, and (2) that he was actually prejudiced as a result. *Strickland*, 466 U.S. at 688, 692-93. An attorney's representation is deficient when it falls "below an objective standard of reasonableness," as determined by reference to "prevailing professional norms." *Id.* at 688. Such performance is prejudicial when it is so poor as to "undermine confidence in the outcome" of the proceedings—that is, it gives rise to "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694 (internal quotation marks omitted).

Whether the effectiveness of a defendant's legal representation falls short of the minimum required by the Sixth Amendment is a mixed question of law and fact, which we review *de novo*. *Chang v. United States*, 250 F.3d 79, 82 (2d Cir. 2001).

7

## A. Ineffective Assistance of Trial and Appellate Counsel: Right to Public Trial

Morales's first two ineffective assistance claims are premised on what he asserts was his lawyers' failure to protect his Sixth Amendment right to a public trial.[7] Specifically, in reliance on two bare-bones affidavits submitted by his girlfriend and the mother of his child nearly five years after the purported closure, Morales contends that at least those two women were denied access to the courtroom by courthouse security for the final day of voir dire. Without expressly considering those affidavits, the district court determined that Morales's right to a public trial was not violated because the courtroom remained open at all times, *Morales*, 294 F. Supp. 2d at 178-79. We find it unnecessary to dwell on the factual issue, however, because we are convinced that, even if Morales's affidavits are credited in full, counsel's failure to challenge the closure they allege was not unreasonable.[8] *See, e.g.*, *Parisi v. Untied States*, 529 F.3d 134, 140-41 (2d Cir. 2008).

---

[7] The Sixth Amendment guarantees defendants a public trial. U.S. Const. amend. VI; *see also Presley v. Georgia*, 130 S. Ct. 721, 724 (2010) (per curiam) ("The Sixth Amendment right to a public trial extends to the *voir dire* of prospective jurors."). But this right is not absolute. Proceedings may be closed where: (1) a party seeking closure has an overriding interest that is likely to be prejudiced if the court room remains open, (2) the closure is not broader than necessary to protect that overriding interest, (3) the trial court has considered reasonable alternatives to closing the proceedings, and (4) the trial court has made adequate findings to support closure. *Waller v. Georgia*, 467 U.S. 39, 48 (1984). Moreover, even where these elements are not met, a closure may be "too trivial" to constitute a Sixth Amendment violation. *Peterson v. Williams*, 85 F.3d 39, 42 (2d Cir. 1996); *see also Gibbons v. Savage*, 555 F.3d 112, 121 (2d. Cir. 2009). Triviality is not determined by any one factor, such as the duration of the closure or its effect on the outcome of the proceeding. *Peterson*, 85 F.3d. at 42-43. Rather, it is gauged by the degree to which a particular closure undermines the values the Sixth Amendment was designed to protect. *Gibbons*, 555 F.3d at 120-21.

[8] Because we conclude that the representation provided by Morales's lawyers was not objectively unreasonable, we do not address whether Morales suffered prejudice as a result of his counsel's conduct.

*Strickland* requires that "scrutiny of counsel's performance be highly deferential," and that "every effort be made to eliminate the distorting effects of hindsight." *Strickland*, 466 U.S. at 689. This compels us "to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* As a preliminary matter, thus, we note that there is no evidence in the record that defense counsel—or anyone in the courtroom—knew of the alleged closure at the time, or at any time before Morales's two affiants came forward years after the fact. Indeed, none of the lawyers representing Morales's ten co-defendants lodged an objection or raised a point of appeal regarding the alleged closure. As such, there is strong reason to believe defense counsel was *not* aware of any closure and thus cannot be faulted for failing to raise an issue about which he had neither knowledge nor reason to know. *United States v. Cronic*, 466 U.S. 648, 656 n.19 (1984).

Moreover, even assuming counsel was aware of the supposed closure, we cannot deem his failure to object to the closure unreasonable. Crediting Morales's affidavits to the fullest extent possible, the closure lasted not much longer than one morning out of a multi-month trial. During that period of time the general public was denied access to witnessing the prospective jurors: state their names; give excuses individually as to why they could not serve on the jury; have their names drawn for the jury, and be dismissed. Importantly, the record indicates that voir dire occurred in the days proceeding the day the closure occurred, so that any questioning of potential jurors as to their fitness or bias was open to the public.[9] It is true that the court took preemptory challenges on the day of the closure, but these challenges are seldom, if ever,

_____

[9] In the context of making excuses on the day of the closure, several members of the jury pool did mention potential personal biases. The vast majority of those questioned, however, were only concerned about the inconvenience jury service might cause.

9

registered within earshot of spectators, so the public was not precluded from witnessing anything

to which it otherwise would have been privy. In short, the ultimate effect of the day's closed

proceedings was the random selection of a jury out of the wheel, and the non-public exercise of

peremptory challenges.[10] Given what are generally understood to be the values protected by the

Sixth Amendment right to a public trial,[11] it is difficult to see how Morales's lawyers at the time

of the courtroom closure and after the trial would perceive Morales's right to a public trial to

have been violated. It would not be unreasonable for a defense attorney—if she were aware of

any closure at all—to believe that Morales's trial had been unaffected notwithstanding the

public's absence. In this regard, we reiterate that none of the lawyers for Morales's ten co-

defendants objected to the alleged closure or raised the issue on appeal, is itself evidence that

Morales's counsel's conduct here was not objectively unreasonable for *Strickland* purposes. *See*

*Strickland*, 466 U.S. at 688 (noting that counsel's performance is to be evaluated in light of

"prevailing professional norms"). For the same reasons it was not unreasonable for Morales's

trial attorney to fail to object to whatever closure may have occurred, the performance of his

appellate attorney was also not deficient.

---

[10] The jury pool was excused during preemptories, which were exercised "right here in open court." This occurred, however, because of the sheer number of co-defendants involved in the trial would have made a traditional side bar impossible. Given these rather unique logistical circumstances, it is fair to consider the preemptory process in this case as essentially one large side bar and nothing which the public would have witnessed aurally.

[11] The Supreme Court has listed the purpose behind the Sixth Amendment's public trial guarantee is to: (1) ensure a fair trial, (2) remind the prosecutor and judge of their responsibility to the accused and the importance of their functions, (3) encourage witnesses to come forward, and (4) discourage perjury. *See Waller*, 467 U.S. at 46-47.

Alternatively, Morales contends the district court erred in failing to hold a factual hearing with regard to his claims. Section 2255(b) provides that "[u]nless the motion and files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall . . . grant a prompt hearing." 28 U.S.C. § 2255(b). We have interpreted this provision as requiring a hearing in cases where the petitioner has made a "plausible claim" of ineffective assistance of counsel. *Puglisi v. United States*, 586 F.3d 209, 213 (2d Cir. 2009) (quotation marks omitted). A district court's determination that it can resolve a section 2255 motion without resort to an evidentiary hearing is reviewed for abuse of discretion. *Chang v. United States*, 250 F.3d 79, 82 (2d Cir. 2004).

We find no abuse of discretion on these facts. For the reasons set forth above, the record before the district court did not and could not demonstrate a plausible claim. Even crediting Morales's affidavits in full, they are insufficient to establish a claim for ineffective assistance of counsel. Accordingly, while the district court overreached in stating that "there is *no evidence* that any member of the public . . . was specifically excluded from the proceedings," *Morales*, 284 F. Supp. 2d at 179 n.1 (emphasis added), it did not err in failing to hold a hearing to explore that evidence further.

### B. Ineffective Assistance of Appellate Counsel: Count 27 Sentence

Morales also argues that his appellate counsel unreasonably failed to challenge the life sentence imposed on Count 27, the conspiracy count. We hold that in light of Morales's five other life-sentences, he was not prejudiced by any sentencing error with respect to this count and, therefore, he could not have been prejudiced by his attorney's failure to raise the issue on appeal. As a result, Morales is not eligible for any relief on this claim, and it is unnecessary to

11

determine whether his appellate attorney's performance was deficient. *Strickland*, 466 U.S. at 697.

That said, we take this opportunity to point out that it remains an open question in this Circuit whether convictions for substantive drug offenses may be used to clarify an ambiguous jury verdict convicting a defendant of conspiracy to distribute multiple types of drugs. Morales was charged and convicted on Count 27 with conspiracy to possess with intent to distribute four different controlled substances: marijuana, heroin, cocaine, and cocaine base. The jury did not return a special verdict identifying which one—or which combination—of the four drugs he conspired to possess. The maximum sentence for conspiracy to possess with intent to distribute significant quantities of these controlled substances differs depending on the drug: for marijuana, it is 10 years; for cocaine base, it is life in prison.[12] As noted, the court imposed a life sentence.

In his section 2255 motion, Morales argued that his appellate counsel should have contested his Count 27 sentence because it was clearly improper under the law of this Circuit. Specifically, Morales contended that under *United States v. Orozco-Prada*, 732 F.2d 1076 (2d Cir. 1984), and its progeny, he should have been sentenced for a conspiracy to possess with intent to distribute only the drug for which the most lenient statutory sentencing range would be imposed—in this case, marijuana. In *Orozco-Prada*, the defendant was convicted on a count of

---

[12] A person convicted of conspiracy to commit a drug offense is subject to the same penalties as those who have actually *committed* the substantive drug offenses that are the object of the conpiracy. 21 U.S.C. § 846. Thus, because the maximum sentence for possessing with intent to distribute marijuana is 10 years, 21 U.S.C. § 841(b)(1)(D), the longest a defendant may be imprisoned for conspiracy to possess with intent to distribute marijuana is also 10 years. The same analysis applies for crack cocaine, which at the time Morales was sentenced carried a maximum penalty of life in prison for possession with intent to distribute. 21 U.S.C. § 841(b)(1)(A)(iii), *amended by* Fair Sentencing Act of 2010, Pub. L. No. 111-220, 124 Stat. 2372 (2010).

conspiracy to possess and distribute marijuana and cocaine. *See id.* at 732 F.2d at 1083. Although the jury's general verdict did not specify which drugs the defendant conspired to possess and distribute, the trial court sentenced him to a prison term in excess of the maximum allowed for a marijuana conspiracy. *Id.* On appeal, we held that because, "in the absence of a special verdict, there was no way for [the trial judge] to know whether the jury intended to convict Eduardo Orozco for a cocaine-related conspiracy, for a marijuana-related conspiracy, or for a conspiracy involving both drugs," the judge should have inferred that the conviction was for the drug conspiracy with the lowest statutory maximum, and sentenced accordingly. *Id.* at 1083-84.

Subsequent cases have affirmed this rule. In *United States v. Barnes*, 158 F.3d 662 (2d Cir. 1998), we considered the case of one of Morales's co-defendants, Christopher Barnes, who was also convicted and sentenced on the same conspiracy count—Count 27. Barnes claimed that it was improper for the judge to base the mandatory minimum sentence for that count on a conspiracy related to cocaine base when, like Morales, he was charged with conspiring to possess multiple types of drugs, including those with lesser sentencing ranges. *Id.* at 667. We agreed, and held that because a general verdict of guilty does not indicate whether the jury convicted the defendant of conspiracy to possess each controlled substance charged in Count 27, the district court should have assumed that the jury convicted the defendant of conspiring to possess the controlled substance "that carries the most lenient statutorily prescribed sentence." *Id.* at 668. We applied this rule again in *United States v. Zillgitt*, 286 F.3d 128 (2d Cir. 2002), on essentially the same facts as in *Orozco-Prada*. Thus, by the time Morales made his section 2255 motion, it was clear that "where a jury returns a guilty verdict on a single count of conspiracy

13

involving multiple controlled substances, the district court must sentence the defendant as if convicted of a conspiracy involving only the substance that carries the lowest statutory sentencing range." *Id.* at 131.

Here, the district court was aware of the rule in *Orozco-Prada*, but nevertheless found it inapplicable to Morales. *Morales*, 294 F. Supp. 2d at 180-81. Instead, it determined that the appropriate case to follow was *United States v. Peters*, 617 F.2d 503 (7th Cir. 1980), which articulated a rule that the district court believed this Circuit had adopted as an exception to *Orozco-Prada*. *Morales*, 294 F. Supp. 2d at 181. *Peters* allows a judge at sentencing to assume that the jury found the defendant guilty of conspiracy to commit any crime for which he was also substantively convicted. 617 F.2d at 506. Applying *Peters* to Morales's case, the district court concluded that "since Morales was also convicted for possessing cocaine base, the court reasonably inferred that the jury convicted Morales for conspiracy to possess cocaine base despite the absence of a special verdict on that count." *Morales*, 294 F. Supp. 2d at 181 (citation omitted).

We write to clarify that we have not yet expressly adopted any exception to the rule concerning general verdicts on multiple-drug conspiracy counts set forth in *Orozco-Prada*. In *Orozco-Prada*, we addressed *Peters* to distinguish it, but we did not adopt its holding. Our treatment of *Peters* was limited to stating that the case at hand was "unlike *United States v. Peters*," and we provided a short description of *Peters*' holding to show how the case was different. *Orozco-Prada*, 732 F.2d at 1084. The fact that we did not adopt *Peters* is made clear by our decision in *Zillgitt* where we stated, "[w]e need not decide here whether convictions on substantive charges could serve to clarify an ambiguous verdict . . .." 286 F.3d at 136 n.6. If

14

indeed we had adopted *Peters* or a similar exception to *Orozco-Prada*, this would not have remained an open question.

Based on our disposition of Morales's ineffective assistance Count 27 sentencing claims, we see no reason to resolve the question now. Unlike the case of Morales's co-defendant Barnes, the propriety of Morales's sentence on Count 27 is not directly before us. Moreover, while the parties partially briefed the question of whether this Circuit had adopted *Peters* in the past, neither side engaged in any substantive discussion about whether—in the event that we had not—we *should* adopt *Peters* going forward. Given these considerations, we will wait until the issue is squarely before us before deciding it.

## CONCLUSION

For the foregoing reasons, the district court's judgment is **AFFIRMED**.

15

POOLER, *Circuit Judge*, concurring dubitante:

I agree that the district court erred by finding, despite affidavits submitted by two of Morales's family members, that "there is no evidence that any member of the public . . . was specifically excluded from the proceedings." Op. at 11.  In addition, I agree, although with reservation, that in this case, where neither Morales's attorney nor any of the ten attorneys representing the other ten defendants objected or appealed the closure and where there is no evidence that any of the ten attorneys knew of the alleged closure in time to object or directly appeal, Morales has not stated a "plausible" claim of ineffective assistance of counsel.  The ten other attorneys' failure to object or, after due consideration, to appeal the alleged courtroom closure is a strong reason to believe that no defense attorney was aware or had reason to be aware of any closure.  On these unique facts, it is not plausible that Morales's attorney acted below an objective standard of reasonableness in failing to object to or appeal the alleged courtroom closure.

Lastly, I emphasize that we do not hold that an ineffective assistance of counsel claim is not "plausible" when the courtroom is closed during the parties' exercise of peremptory challenges.  *Cf. Gibbons v. Savage*, 555 F.3d 112, 114, 121 (2d Cir. 2009) (finding that courtroom closure for "the afternoon of the first day" of a "several day[]" jury selection was a trivial closure, given that the public "would not have been able to watch a significant portion of what occurred during that afternoon session" and "nothing of significance happened during the part of the session [that was closed]," in part because "[n]o peremptory challenges were made"). The denial of a public trial is part of "a limited class of fundamental constitutional errors that defy analysis by harmless error standards." *Neder v. United States*, 527 U.S. 1, 7 (1999); *Waller*

1

*v. Georgia*, 467 U.S. 39, 49 (1984).  Because "the benefits of a public trial are frequently intangible, difficult to prove, or a matter of chance," violation of the public-trial guarantee "is not subject to harmlessness review" on direct appeal.  *United States v. Gonzalez-Lopez*, 548 U.S. 140, 149 n.4 (2006) (internal quotation marks omitted).  As our sister circuits have held, for post-conviction relief under Section 2255, the plausibility of a petitioner's ineffective assistance of counsel claim does not depend on whether the petitioner can prove he was denied one of the "frequently intangible" and "difficult to prove" benefits of a public trial.  *See, e.g.*, *United States v. Withers*, -- F.3d --, 2011 WL 6184, at *5, *8 (9th Cir. Jan. 3, 2011) (holding, where "[n]othing in the record indicate[d] that this closure was for a trivial duration, or that the district court complied with the *Press-Enterprise/Waller* requirements [for closure]," that petitioner "made a credible, non-frivolous claim that his trial counsel's performance fell below an objective standard of reasonableness," "particularly because the right to a public trial is critical to ensuring a fair trial."); *Johnson v. Sherry*, 586 F.3d 439, 446 (6th Cir. 2009) (holding, in "the absence of on-the-record findings by the trial court," that an evidentiary hearing is warranted "to determine if trial counsel's failure to object to the closure constitutes deficient performance"); *Owens v. United States*, 483 F.3d 48, 63, 66 (1st Cir. 2007) (holding that "the district court abused its discretion in declining to hold an evidentiary hearing" because "[Defendant's] attorneys' failure to notice or object to the closure of his trial may show that their performance fell below an objective standard of reasonableness." (internal quotation marks omitted)).