11-2845
United States v. Plaza-Andrades

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

**SUMMARY ORDER**

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Daniel Patrick Moynihan Courthouse, 500 Pearl Street, in the City of New York, on the 4th day of January, two thousand thirteen.

Present:
      ROBERT A. KATZMANN,
      BARRINGTON D. PARKER,
      RICHARD C. WESLEY,
            *Circuit Judges*,

---

UNITED STATES OF AMERICA,

    *Appellee*,

        v.                    No. 11-2845

IVAN PLAZA-ANDRADES,

    *Defendant-Appellant*.[*]

---

For Appellee:          ELIZABETH S. RIKER (Carla B. Freedman, *on the brief*), Assistant United States Attorneys, *for* Richard S. Hartunian, United States Attorney for the Northern District of New York, Syracuse, NY

---

[*] The Clerk of the Court is directed to amend the caption of this case as set forth above.

For Defendant-Appellant: SALLY WASSERMAN, New York, NY

Appeal from the United States District Court for the Northern District of New York (Hurd, *J.*).

**ON CONSIDERATION WHEREOF**, it is hereby **ORDERED**, **ADJUDGED**, and **DECREED** that the judgment of the district court is **AFFIRMED**.

Defendant-Appellant Ivan Plaza-Andrades appeals from a June 17, 2011 final judgment of the United States District Court for the Northern District of New York (Hurd, *J.*), denying his motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. Plaza-Andrades is currently serving a 121-month sentence after being convicted by a jury of conspiracy to distribute cocaine and possession of cocaine with intent to distribute. On appeal, Plaza-Andrades contends that his trial counsel was constitutionally ineffective for two reasons. First, he contends that his counsel failed to move to dismiss the indictment pursuant to the Speedy Trial Act, 18 U.S.C. §§ 3161-3174, despite the passage of over a year between the filing of the indictment and the commencement of his trial. Second, he contends that his counsel failed to challenge holding his trial in the Utica Division of the Northern District of New York, which purportedly has a lower proportion of racial minorities than the Syracuse/Auburn Division of the Northern District where his offense conduct occurred, in violation of his Sixth Amendment right to a jury chosen from a "fair community cross section." *Duren v. Missouri*, 439 U.S. 357, 368 n.26 (1979). We presume the parties' familiarity with the facts and procedural history of this case.

"On an appeal from the denial of a § 2255 motion, we review a district court's conclusions of law *de novo* but will accept its factual findings unless they are clearly erroneous."

2

*Sapia v. United States*, 433 F.3d 212, 216 (2d Cir. 2005). "Section 2255 allows a federal prisoner to attack collaterally his sentence on the grounds that it was 'imposed in violation of the Constitution.'" *Morales v. United States*, 635 F.3d 39, 42–43 (2d Cir. 2011) (quoting 28 U.S.C. § 2255(a)). "Because the Sixth Amendment provides criminal defendants with the right to *effective* assistance of counsel, inadequate representation is a basis for relief under section 2255." *Id.* at 43 (internal citation omitted).

The Sixth Amendment guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right to . . . have the Assistance of Counsel for his defence." U.S. CONST. amend. VI. In order to prevail on an ineffective assistance of counsel claim, petitioner must show (1) "that counsel's representation fell below an objective standard of reasonableness," and (2) "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984). In evaluating whether counsel's performance was deficient, "[t]he question is whether an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom." *Harrington v. Richter*, 131 S. Ct. 770, 788 (2011) (quoting *Strickland*, 466 U.S. at 690). We "'must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance,' bearing in mind that '[t]here are countless ways to provide effective assistance in any given case' and that '[e]ven the best criminal defense attorneys would not defend a particular client in the same way." *United States v. Aguirre*, 912 F.2d 555, 560 (2d Cir. 1990) (quoting *Strickland*, 466 U.S. at 689)). In evaluating whether the proceeding would have been different but for counsel's error, "[t]he likelihood of a different result must be substantial, not just conceivable." *Harrington*, 131 S. Ct. at 792.

3

Because we find that the district court here did not violate the Speedy Trial Act, Plaza-Andrades cannot show that his counsel was deficient in failing to move to dismiss the indictment on this ground. The Speedy Trial Act "generally requires a trial to begin within 70 days of the filing of an information or indictment or the defendant's initial appearance." *Zedner v. United States*, 547 U.S. 489, 497 (2006); *see also* 18 U.S.C. § 3161(c)(1) (A federal criminal trial "shall commence within seventy days from the filing date (and making public) of the information or indictment, or from the date the defendant has appeared before a judicial officer of the court in which such charge is pending, whichever date last occurs."). However, in recognition that "criminal cases vary widely and that there are valid reasons for greater delay in particular cases," the Act permits district courts to order "ends-of-justice continuances" and exclude the resulting delay from the 70 day period. *Zedner*, 547 U.S. at 497–98; 18 U.S.C. § 3161(h)(7) . To grant an "ends-of-justice" continuance properly, the district court must, after considering certain factors, "make[] on-the-record findings that the ends of justice served by granting the continuance outweigh the public's and defendant's interests in a speedy trial." *Zedner*, 547 U.S. at 498–99; *see also* 18 U.S.C. § 3161(h)(7)(B) (setting forth non-inclusive list of factors that court may consider in deciding whether to suspend the speedy trial clock so as to further the "ends of justice"). District courts have "broad discretion" in determining whether to suspend the speedy trial clock. *See United States v. Rojas-Contreras*, 474 U.S. 231, 236 (1985).

The district court did not abuse that discretion here. The nine suspensions of the speedy trial clock were all accompanied by express, on-the-record findings by the district court that suspension furthered the ends of justice. Although these conclusions were reached based on the facts stipulated to by the parties, there was no error in the district court accepting these facts and

4

granting suspensions for reasons such as the need for the defense attorney to review discovery, a desire to enter plea negotiations, and substitution of counsel.

Plaza-Andrades argues that these were merely "pro forma" orders. But these on-the-record findings do not reach the level of abdication that we suggested existed in *Parisi v. United States*, 529 F.3d 134 (2d Cir. 2008), where the district court merely "so ordered" the parties' stipulated order suspending the clock, leading us to state that "it [was] not entirely clear whether the district court made its own ends-of-justice findings or even whether it signed off on those to which the parties had purported to stipulate." *Id.* at 140. Here, in addition to adopting the stipulated facts as the district court's own findings, the court also noted that it "considered its obligation . . . to determine whether a continuance serves the ends of justice," and separately found that, for example, "the ends of justice served by granting the requested continuance outweigh the best interests of the public and the defendants in a speedy trial because this delay is necessary in order to allow the parties the reasonable time necessary for effective preparation, taking into account the exercise of due diligence." App'x 38. The district court also noted that the continuance was "based on the stipulated facts and the court's related findings." *Id.* This is not a case where we are unclear whether the district court made its own findings, *Parisi*, 529 F.3d at 140, nor is it a case where the district court made no findings, *Zedner*, 547 U.S. at 506–07.

Moreover, like *Parisi*, Plaza-Andrades is attacking this issue collaterally, claiming ineffective assistance of counsel, rather than arguing violations of the Act on direct appeal. In *Parisi*, we declined to decide whether the "so ordered" suspensions violated the Act, as we could not deem Parisi's counsel ineffective for failing to object to a practice whose legality "remains

5

an open question, one not yet squarely either decided by *Zedner* or this Circuit." *Id.* at 140-41.

Accordingly, following *Parisi*, we cannot conclude that Plaza-Andrades's counsel was

ineffective because he did not object to a practice that neither the Supreme Court nor this Circuit

has squarely rejected.

Plaza-Andrades next contends that his counsel was ineffective because his Sixth

Amendment right to a jury comprised of a "fair community cross section" was violated because

his trial was held in the Utica Division of the Northern District of New York, instead of the more

ethnically diverse Syracuse/Auburn Division of the Northern District. *See Duren*, 439 U.S. at

368 n.26. This claim also fails. To state a fair-cross-section claim, a distinctive group's

underrepresentation in a jury pool must be "due to systematic exclusion of the group in the

jury-selection process." *Duren*, 439 U.S. at 364. The Northern District's random assignment of

criminal cases to different Divisions based on a neutral case assignment plan does not, on its

face, constitute a "systematic exclusion" of any group from jury service. *See United States v.*

*Bahna*, 68 F.3d 19, 24 (2d Cir. 1995) (rejecting that Sixth Amendment entitles defendant to jury

drawn from district-wide jury wheel, rather than division-wide jury wheel with proportionally

fewer minorities). Plaza-Andrades does not contend that "there was [an] improper purpose or

design in the creation of the [Utica] Division jury wheel," nor does he contend that there was any

other "systematic exclusion" of racial minorities from within the Utica Division jury pool. *See*

*Bhana*, 68 F.3d at 24–25. And our precedent makes clear that the Sixth Amendment does not

entitle a defendant to be tried in a geographic location any more specific than the District where

the offense was allegedly committed. *See United States v. Fernandez*, 480 F.2d 726, 730 (2d

Cir. 1973) (rejecting county-specific interpretation of Sixth Amendment as "extreme"); U.S.

6

CONST. amend. VI. ("[T]he accused shall enjoy the right to speedy and public trial, by an impartial jury of the State and *district* wherein the crime shall have been committed." (emphasis added)). Plaza-Andrades's trial counsel was not ineffective because he did not object to holding the trial in the Utica Division of the Northern District of New York.

We have considered all of the defendant's remaining arguments and find them to be without merit. Accordingly, for the foregoing reasons, the judgment of the district court is **AFFIRMED**.

FOR THE COURT:
CATHERINE O'HAGAN WOLFE, CLERK

7